```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                          15 Cr. 457 (KPF)

 5   BRANDON LISI,

 6              Defendant.                  Plea (by video)

 7   ------------------------------x

 8                                          New York, N.Y.
                                            April 3, 2017
 9                                          9:35 a.m.

10
     Before:
11
                         HON. KATHERINE POLK FAILLA,
12
                                            District Judge
13

14                            APPEARANCES

15   JOON H. KIM
          Acting United States Attorney for the
16        Southern District of New York
     KATHERINE REILLY
17   NOAH SOLOWIEJCZYK
          Assistant United States Attorneys
18
     LISA SCOLARI
19        Attorney for Defendant

20

21

22

23

24

25
```

1        (Case called)

2            MS. REILLY:  Good morning, your Honor, Katherine

3   Reilly and Noah Solowiejczyk for the government.

4            MS. SCOLARI:  Good morning, your Honor, Lisa Scolari

5   for Mr. Lisi.

6            THE COURT:  Good morning.

7            Mr. Lisi.  I can see you.  Can you see me this

8   morning, sir?

9            THE DEFENDANT:  Yes, your Honor.  Good morning.

10            THE COURT:  Good morning, sir.  Sir, if at any point

11   you have any difficulty hearing or understanding what's going

12   on, I would ask you please to perhaps just raise your hand and

13   we will know that there is something going on.

14            THE DEFENDANT:  Yes, your Honor.

15            THE COURT:  At the moment there are no problems

16   hearing me?

17            THE DEFENDANT:  No.  There is a little bit of a delay,

18   your Honor, but I can hear you just fine.

19            THE COURT:  I will keep that in mind.  I have no delay

20   at this end, but I will keep in mind that there is one at your

21   end.

22            Sir, at this time do you have in front of you a copy

23   of the indictment in this case and a copy of a letter to

24   Ms. Scolari that is dated the 28th of March?

25            THE DEFENDANT:  I do, your Honor.

1          THE COURT:  Ms. Scolari and I will talk for just a

2    moment and then I am going to talk back with you.

3          MS. SCOLARI:  May I make a request before we go

4    further?

5          THE COURT:  Of course.

6          MS. SCOLARI:  As your Honor knows, the camera only

7    shows the bench, and I had indicated to Mr. Lisi that we can

8    put on the record everyone who is in the courtroom since he

9    can't see.  I think it would be appropriate to let him know

10   that.

11         THE COURT:  At this time, Mr. Lisi, there are the two

12   prosecutors who introduced themselves, Mr. Solowiejczyk and

13   Ms. Reilly; Ms. Scolari is here; Mr. Greenblum, the court

14   reporter, is here; Mr. Lopez, my deputy, is here; I am here; my

15   law clerk, Mr. Bertoldi, is here; and there is a gentleman in

16   the back of the courtroom.

17         MR. SMYTHE:  Special Agent Smythe.

18         THE COURT:  And he is going to step up and sit with

19   the prosecutors right now.  That's who we have got in the

20   courtroom right now.

21         Mr. Lisi, you cannot see Ms. Scolari, but she is here

22   and I do understand, sir, that if at any time you wish to speak

23   with her, there are arrangements that we can make to have a

24   phone call that you could place to the robing room that's next

25   to this courtroom and you would be able to have a private

1   conversation with her.

2          Mr. Lisi, it is my understanding, sir, that you wish

3   to plead guilty this morning to Count One of the indictment

4   that's in front of you right now and it has the docket number

5   15 Cr. 457.  Is that correct, sir?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  Mr. Lisi, before I can accept your plea, I

8   need to ask you a series of questions and they are designed to

9   establish different things.  What I'd first like to do is make

10  sure that you're competent to enter a plea of guilty, that you

11  are not under the influence of anything medicinal, emotional

12  that would keep you from seeing or hearing or understanding

13  what's going on this morning.  I would also like to make sure

14  that you know the rights that you have and the rights that you

15  would be waiving by entering a plea of guilty.  I'd like to

16  talk to you about the charge in this case to which you propose

17  to plead guilty, the elements of that charge, and the penalties

18  that are associated with that charge.  Finally, I would just

19  like to talk to you and understand what it is you did that

20  makes you believe that you are guilty of this offense.

21         Sir, I want to ask you some background questions

22  first, but I will just say that the most important thing this

23  morning is that you understand what's going on.  As I mentioned

24  earlier, if there is anything that is unclear, either because

25  of technological issues or because of the nature of the

1    question I'm asking, please let me know.  All right, sir?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  Sir, if I don't hear from you I will

4    understand that you understand what's going on.

5              Let me begin with this question, sir.  It is my

6    understanding that for a number of reasons you're at FCI Fort

7    Dix this morning, sir?

8              THE DEFENDANT:  Yes, your Honor.

9              THE COURT:  In speaking with your counsel I understand

10   that for various reasons, including medical reasons, it is your

11   preference to remain at FCI Fort Dix and to enter your guilty

12   plea from there by video conferencing.  Is that correct, sir?

13             THE DEFENDANT:  Yes, your Honor.

14             THE COURT:  And do you understand, sir, that in other

15   circumstances, if you wanted to, you would have a right to be

16   present here in the courtroom with me now and we could make

17   arrangements for your transportation to the Southern District

18   of New York.  Are you aware of that?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  And so have you, in consultation with your

21   counsel, decided to waive that right to be present this

22   morning?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  Again, I have spoken with your counsel

25   about various medical and other issues.  It would be my thought

1   that we not put those on the record, but if you'd like me to we

2   can.

3           THE DEFENDANT:  That would be up to the Court, your

4   Honor.  I'm fine either way.

5           THE COURT:  Ms. Scolari, have you had enough of an

6   opportunity to speak to Mr. Lisi about his right to be present

7   here this morning in open court?

8           MS. SCOLARI:  I have, your Honor.

9           THE COURT:  Upon consultation with him and for the

10  reasons that you've discussed with me earlier, it is his

11  preference, it is his decision to waive that right to be

12  present here this morning.

13          MS. SCOLARI:  Yes, your Honor.  It is at his request

14  that we are doing this.

15          THE COURT:  Then I will consider the matter waived.

16          Mr. Lopez, can I ask you, please, to administer the

17  oath to Mr. Lisi.

18          THE DEPUTY CLERK:  Yes, your Honor.

19          (Defendant sworn)

20          THE DEPUTY CLERK:  Please state your name for the

21  record.

22          THE DEFENDANT:  Brandon Lisi.

23          THE COURT:  Mr. Lisi, the significance of my deputy

24  placing you under oath is that you are now under oath and any

25  statements that you make that are false could subject you to

1   the additional penalty of perjury.  Do you understand that,

2   sir?

3            THE DEFENDANT:  Yes, your Honor.

4            THE COURT:  Mr. Lisi, how old are you?

5            THE DEFENDANT:  43 years of age, your Honor.

6            THE COURT:  How far did you go in school, sir?

7            THE DEFENDANT:  I have a juris doctorate.  It's a law

8   degree.

9            THE COURT:  Did you attend school in the New York area

10  or somewhere else?

11           THE DEFENDANT:  The highest level of education was

12  between Miami and the New York area.

13           THE COURT:  Sir, have you ever been treated or

14  hospitalized for any form of mental illness?

15           THE DEFENDANT:  No, your Honor.

16           THE COURT:  And are you now under the care of a doctor

17  or a psychiatrist?

18           THE DEFENDANT:  I am under the care of a doctor, your

19  Honor.

20           THE COURT:  And I have spoken with your counsel about

21  the medical care that you are receiving.  Are you currently,

22  sir, receiving any medications attendant to those medical

23  issues?

24           THE DEFENDANT:  I am, your Honor.

25           THE COURT:  And do those medications cause you to have

1   any difficulty seeing or hearing or understanding what's going

2   on this morning?

3            THE DEFENDANT:  No, your Honor.

4            THE COURT:  Would you mind letting me know what

5   medications have been prescribed for you, sir.

6            THE DEFENDANT:  Yes, your Honor.  I'm on the

7   following -- I have the following medications that I take on a

8   daily basis, sometimes more than once a day.  I'll try and

9   sound them out phonetically:  Amlodipine; Lisinopril;

10  hydrochlorizide; montelukast sodium; tiotropium bromide,

11  duloxetine HCI, ibuprofen, 800 milligrams; budesonide

12  formoterol, chlorhexidine gluconate; and Albuterol, your Honor.

13           THE COURT:  And none of these, either alone or in

14  combination, would cause you to feel fuzzy or have any

15  difficulties understanding what's going on today, sir?

16           THE DEFENDANT:  No, your Honor.  Two of them are pain

17  medications, but nothing that should impact today's proceedings

18  at all, your Honor.

19           THE COURT:  Sir, other than the medical conditions for

20  which you've been prescribed, these substances, are you under

21  medical treatment for anything else?  Are you receiving any

22  other medical care, sir?

23           THE DEFENDANT:  Other than for these -- other than

24  that these medications are directed for?

25           THE COURT:  Yes, sir.

1        THE DEFENDANT:  No.

2        THE COURT:  Are you receiving any psychological or

3   psychiatric services at this time, sir?

4        THE DEFENDANT:  No, your Honor.

5        THE COURT:  And I believe I know the answer to this.

6   Have you consumed any alcoholic beverages in the past two days,

7   sir?

8        THE DEFENDANT:  No, your Honor.

9        THE COURT:  I did not think so, sir.

10       Mr. Lisi, is your mind clear today?

11       THE DEFENDANT:  Yes, your Honor.

12       THE COURT:  Do you understand what is happening?

13       THE DEFENDANT:  Yes, your Honor.

14       THE COURT:  Ms. Scolari, have you discussed this

15   matter fully with Mr. Lisi?

16       MS. SCOLARI:  I have, your Honor.

17       THE COURT:  Do you believe he understands the rights

18   that he would be waiving by pleading guilty?

19       MS. SCOLARI:  I do.

20       THE COURT:  Do you believe he understands the nature

21   of these proceedings this morning?

22       MS. SCOLARI:  Yes, I do.

23       THE COURT:  Do you have any doubt as to his competence

24   to plead guilty?

25       MS. SCOLARI:  I do not.

1    THE COURT:  Ms. Reilly, do you have any doubt as to

2    Mr. Lisi's competence to plead guilty?

3    MS. REILLY:  No, your Honor.

4    THE COURT:  Mr. Lisi, based on your responses to my

5    questions, which would include both the actual words that you

6    used and my observations of your demeanor here on the video,

7    and based as well on the conversations that I've just had with

8    your attorney and with the attorney for government, I find that

9    you are fully competent to enter a knowing and informed plea of

10    guilty.

11    Sir, I am going to ask you please to direct your

12    attention to the indictment in this case.  Do you have that in

13    front of you?

14    THE DEFENDANT:  I do, your Honor.

15    THE COURT:  I know I have asked you questions about it

16    previously, but I do want to reask a few of them.  Have you at

17    any point prior to today read this indictment, sir?

18    THE DEFENDANT:  I have, your Honor.

19    THE COURT:  And, in particular, have you read Count

20    One of the indictment, which is the count to which you propose

21    to plead guilty?

22    THE DEFENDANT:  I have, your Honor.

23    THE COURT:  Have you had a sufficient opportunity to

24    speak with Ms. Scolari about Count One, the charge to which you

25    intend to plead guilty, and any possible defenses that you

1    might have to that charge?

2                    THE DEFENDANT:  Yes, your Honor.

3                    THE COURT:  And has she discussed with you the

4    consequences of entering a plea of guilty?

5                    THE DEFENDANT:  Yes, your Honor.

6                    THE COURT:  Are you satisfied with her representation

7    of you in this matter?

8                    THE DEFENDANT:  Yes, your Honor.

9                    THE COURT:  Mr. Lisi, what I'd like to do now is talk

10   to you about certain constitutional rights that you have and

11   that you would be giving up by entering a plea of guilty.  As I

12   mentioned earlier, if there is anything that is unclear to you,

13   please let me know and either your attorney or I will take a

14   moment to speak to you about the right in question.

15                    Let me begin in this manner.  Under the Constitution

16   and laws of the United States, you have a right to plead not

17   guilty or to continue with your plea of not guilty to Count One

18   of the indictment.  Do you understand that, sir?

19                    THE DEFENDANT:  Yes, your Honor.

20                    THE COURT:  And if you continued with your plea of not

21   guilty, you would be entitled to a speedy and public trial by a

22   jury on the charges contained in this indictment.  Do you

23   understand, sir?

24                    THE DEFENDANT:  Yes, your Honor.

25                    THE COURT:  At a trial you would be presumed to be

1    innocent and the government would be required to prove you

2    guilty by competent evidence beyond a reasonable doubt before

3    you could be found guilty.  Do you understand that, sir?

4            THE DEFENDANT:  I do, your Honor.

5            THE COURT:  A jury of 12 people would have to agree

6    unanimously that you were guilty and you would not have to

7    prove that you were innocent if you were to proceed to trial.

8    Do you understand that, sir?

9            THE DEFENDANT:  Yes, your Honor.

10           THE COURT:  At a trial and at every stage of your

11   prosecution you are entitled to the assistance of an attorney.

12   And if at any point you could not afford an attorney, one would

13   be appointed for you at public expense and free of cost to you

14   in order to represent you.  Do you understand that?

15           THE DEFENDANT:  Yes, your Honor.

16           THE COURT:  If there were a trial in this case, the

17   witnesses for the government would have to come to open court

18   and testify in your presence and your attorney could

19   cross-examine the witnesses for the government, she could

20   object to evidence offered by the government, she could offer

21   evidence on your own behalf if you wanted her to.  You would

22   also have the right to have subpoenas or other documents or

23   process used in order to compel witnesses to testify in your

24   defense.  Do you understand that, sir?

25           THE DEFENDANT:  Yes, your Honor.

 1              THE COURT:  And if there were a trial in this case,

 2     Mr. Lisi, you would have the right to testify if you wanted to

 3     do so, and you would have the right not to testify if you

 4     wanted not to do so.  And if you decided not to testify, no

 5     one, including the jury, could draw any inference or suggestion

 6     of guilt from your decision not to testify.  Do you understand

 7     that, sir?

 8              THE DEFENDANT:  I do, your Honor.

 9              THE COURT:  Mr. Lisi, another consequence of entering

10     a plea of guilty is that you waive your right to seek

11     suppression or exclusion of the government's evidence against

12     you.  Are you aware of that, sir?

13              THE DEFENDANT:  Yes, your Honor.

14              THE COURT:  Have you had enough of an opportunity to

15     speak with Ms. Scolari about whether there is a basis for you

16     to seek suppression or exclusion of part or all of the

17     government's evidence against you?

18              THE DEFENDANT:  Yes, your Honor.

19              THE COURT:  And do you also understand, sir, that if

20     you were convicted at a trial, you would have the right to

21     appeal from the jury's verdict?

22              THE DEFENDANT:  I do, your Honor.

23              THE COURT:  Even now, Mr. Lisi, as you are entering

24     this guilty plea, you have the right to change your mind and to

25     enter a plea of not guilty, which in this case means continuing

1    with the plea of not guilty that you have made to the charges

2    in the indictment.  Do you understand that, sir?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  If you plead guilty and if I accept your

5    guilty plea, you will give up your right to trial and the other

6    rights that I have just been discussing with you other than

7    your right to counsel.  You have the right to counsel whether

8    you plead guilty or go to trial.  But if you plead guilty and

9    if I accept your guilty plea, there will be no trial and I will

10   enter a judgment of guilty on Count One of the indictment and

11   I'll sentence you at a later date based on the information that

12   I receive from you today, information that I receive from the

13   probation office in what's called the presentence investigation

14   report, and information that I receive from you and your

15   attorney and from the attorneys for the government in

16   connection with sentencing.  If you plead guilty and if I

17   accept your guilty plea, there would be no appeal on the issue

18   of whether the government could use the evidence that it has

19   against you and there would be no appeal on the issue of

20   whether you did in fact commit the offense charged in Count

21   One.  Do you understand that, sir?

22             THE DEFENDANT:  Yes, your Honor.

23             THE COURT:  Mr. Lisi, if you plead guilty, there is a

24   degree to which you will have to give up your right not to

25   incriminate yourself and that is because later on in this

proceeding I will be asking you some questions to confirm that

you are in fact guilty of the offense charged in Count One and

you will have to admit and acknowledge your guilt of that

offense.  Do you understand that, sir?

            THE DEFENDANT:  Yes, your Honor.

            THE COURT:  Mr. Lisi, do you understand each of the

rights that I've been discussing with you for the past few

minutes?

            THE DEFENDANT:  I do, your Honor.

            THE COURT:  And would you like me to provide any

additional or clarifying information about any of those rights?

            THE DEFENDANT:  No, your Honor.

            THE COURT:  Mr. Lisi, are you willing to give up your

right to a trial and the other rights that I've been discussing

with you and enter a plea of guilty to Count One of the

indictment?

            THE DEFENDANT:  Yes, your Honor.

            THE COURT:  Let's turn to the count itself.  You are

charged in this Count One with conspiring to commit wire fraud

in violation of Title 18 of the United States Code, Section

1349.

        Ms. Reilly or Mr. Solowiejczyk, could you please state

the elements of this offense.

        MS. REILLY:  Certainly, your Honor.  As you said,

Count One charges a conspiracy to commit wire fraud.  That

offense has two elements:  First, the existence of the

conspiracy charged; that is, an agreement or understanding

between at least two people to violate the laws of the United

States; here, the laws that make it a crime to commit the

offense of wire fraud; and, second, that the defendant

knowingly and willfully became a member of a conspiracy.

The object of the conspiracy charged in Count One, as

I said, is wire fraud, which is codified in Title 18, United

States Code, Section 1343.  That crime has three elements:

First, that there was a scheme or artifice to defraud or obtain

money or property by materially false and fraudulent pretenses,

representations, or promises; second, that the defendant

knowingly and willfully participated in that scheme or artifice

to defraud with knowledge of its fraudulent nature and with

specific intent to defraud; and, third, that in the execution

of that scheme the defendant used or caused use of interstate

wires.

THE COURT:  Mr. Lisi, were you able to hear the

prosecutor?

THE DEFENDANT:  I was, your Honor.

THE COURT:  Do you understand, sir, that if you were

to proceed to trial on Count One, those are the elements of the

offense that the government would have to prove beyond a

reasonable doubt?

THE DEFENDANT:  I do, your Honor.

1      THE COURT:  Ms. Reilly, is this a situation in which

2   there is venue in the Southern District of New York or was

3   venue waived?

4      MS. REILLY:  There is venue in the Southern District,

5   your Honor.

6      THE COURT:  Mr. Lisi, just to be clear, what I mean by

7   that is, the government would also have to prove by a lesser

8   standard, a preponderance of the evidence standard, that some

9   piece of that conduct took place in the Southern District of

10  New York, which would include Manhattan, the Bronx, Westchester

11  County, and certain counties north of that.  Do you understand

12  that, sir?

13     THE DEFENDANT:  Yes, your Honor.

14     THE COURT:  Let me then turn to a different topic,

15  which is the maximum possible penalties that are associated

16  with the offense charged in Count One.  And I am deliberately

17  using the term maximum to connote the most that could possibly

18  be imposed.  It doesn't mean that's necessarily what you are

19  going to receive, but I do want you to understand that by

20  pleading guilty you are exposing yourself to receiving any

21  combination of punishments up to the statutory maximum terms

22  that I am about to describe.  Do you understand that, sir?

23     THE DEFENDANT:  I do, your Honor.

24     THE COURT:  Let me first talk to you about possible

25  restrictions on your liberty.  The maximum term of imprisonment

1    for Count One is 20 years' imprisonment.  Do you understand

2    that, sir?

3            THE DEFENDANT:  I do, your Honor.

4            THE COURT:  And that could be followed by a term of up

5    to three years of supervised release.  When I use the term

6    supervised release, what I mean is, a period of time where you

7    would be subject to supervision by the United States Probation

8    Office.  There would be terms and conditions of supervised

9    release that you would have to follow.  And if you were to

10   violate those terms and conditions, the possibility exists that

11   you could be returned to prison without a jury trial to serve

12   additional time.  If that were to take place, you would not

13   receive credit for time that you had served in prison on any

14   sentence of imprisonment, and you would not receive credit for

15   any time that you had spent on supervised release without

16   incident.  Do you understand that, sir?

17           THE DEFENDANT:  I do, your Honor.

18           THE COURT:  Do you also understand that there is no

19   parole in the federal system and so if you are sentenced to a

20   term of imprisonment, you would not be released early on

21   parole.  There is an opportunity to earn credit for good

22   behavior, but even then you'd have to serve at least 85 percent

23   of the term, approximately, of the term to which you are

24   sentenced.  Do you understand that?

25           THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  Let me talk about certain financial

2    penalties that are also associated with this offense.  The

3    maximum allowable fine in this case is the greatest of these

4    three things:  Either $250,000 or twice the gross pecuniary

5    gain derived from the offense, or twice the gross pecuniary

6    loss to persons other than yourself, whichever is the greatest.

7    I can order restitution to any person or entity injured as a

8    result of your criminal conduct.  I can order you to forfeit

9    property derived from the offense or used to facilitate the

10   offense, and I must order a mandatory special assessment of

11   $100 per count of conviction.  Do you understand, sir, that

12   these are the maximum possible penalties that are associated

13   with the Count One offense?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  Are you a United States citizen, sir?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  I ask that because some folks who plead

18   guilty before me are not, and a guilty plea can have adverse

19   immigration consequences that I won't discuss with you further.

20          Do you understand, instead, sir, that as a result of

21   your guilty plea there are certain civil rights that you may

22   lose or that you may not be able to obtain in the future,

23   including the right to vote, the right to hold public office,

24   the right to serve on a jury, and the right to possess a

25   firearm?

1              THE DEFENDANT:  Yes, your Honor.

2              THE COURT:  Sir, I appreciate that you're currently

3    serving a sentence for another offense.  In terms of pending

4    prosecutions, is this case the only pending case that you have

5    outstanding?

6              THE DEFENDANT:  Yes, your Honor.

7              THE COURT:  Do you understand, sir, that there is a

8    possibility that the sentence that I impose in this case could

9    be consecutive to the sentence that you are currently serving

10   that brings you to Fort Dix?

11             THE DEFENDANT:  Yes, your Honor.

12             THE COURT:  Sir, do you have familiarity with the

13   United States Sentencing Guidelines?  When I use the term

14   guidelines or sentencing guidelines, do you know what I'm

15   talking about?

16             THE DEFENDANT:  I do, your Honor.

17             THE COURT:  And have you had enough of an opportunity

18   to speak with Ms. Scolari about the process of sentencing in

19   this case?

20             THE DEFENDANT:  Yes, your Honor.

21             THE COURT:  Have you had an opportunity to speak with

22   Ms. Scolari about the guidelines and how they might apply to

23   your case?

24             THE DEFENDANT:  I have, your Honor.

25             THE COURT:  The reason I'm asking that, sir, is the

1    following.  I want to make sure that you understand that if

2    your attorney or anyone else has attempted to predict for you

3    what your ultimate sentence will be, their prediction may be

4    wrong.  No one involved in this plea this morning, not your

5    attorney, not the government's attorneys, nor anyone else, can

6    give you any assurance of what your ultimate sentence will be.

7    I expect that I will be the judge sentencing you and I need to

8    have much more information than I currently do.  I'll need to

9    hear from you this morning, I'll need to hear from the

10   probation office in the presentence investigation report, and

11   I'll need to hear from you and your attorney and from the

12   attorneys for the government in connection with sentencing.

13            Do you understand, sir, that today no one can assure

14   you or give you any assurance as to what your ultimate sentence

15   will be?

16            THE DEFENDANT:  Yes, your Honor.

17            THE COURT:  And do you also understand, sir, that even

18   if your sentence is different from what your attorney or anyone

19   else might have told you it might be, even if it is different

20   from what you expect it or hoped for, and even if it is

21   different from what's contained in any agreement you might have

22   with the government, you would still be bound by your guilty

23   plea and you would not be permitted to withdraw your plea of

24   guilty based merely on dissatisfaction with the sentence

25   received in this case.  Do you understand that, sir?

```
 1              THE DEFENDANT:  Your Honor, may I take a moment to

 2      speak with my counsel.  Is that possible?  I'm sorry for

 3      interrupting the proceedings.

 4              THE COURT:  Not at all, sir.  There is no problem at

 5      all.  Let's do that.  I think what's going to happen is,

 6      you'll place a phone call to us.  We have been given a number

 7      in which to call us.  Do you have that number, sir?

 8              THE DEFENDANT:  We do, your Honor.

 9              THE COURT:  We will ask you, please, to turn off the

10      microphone at your end when you begin the call so that we are

11      not hearing the nature of the call.  All right?

12              THE DEFENDANT:  OK.  Thank you, your Honor.

13              (Recess)

14              THE COURT:  Mr. Lisi, did you have enough of an

15      opportunity to speak with Ms. Scolari about the issues that

16      were causing you concern?

17              THE DEFENDANT:  I did, your Honor.  Again, I'm sorry

18      for interrupting the proceedings.  I was able to speak with

19      her, though.

20              THE COURT:  Sir, you can interrupt the proceedings as

21      many times as you want.  Again, this is to make sure you

22      understand what's going on.

23              MS. SCOLARI:  Judge, can I just say, I'm back in the

24      courtroom with everybody, Mr. Lisi.

25              THE COURT:  Mr. Lisi, I'm sorry, because you cannot
```

1    see this, Ms. Scolari walked in at the same time you were

2    walking to your seat.  She is now seated back in the courtroom

3    with the rest of us.

4                THE DEFENDANT:  Thank you, your Honor.

5                THE COURT:  Sir, the last question I asked you I am

6    going to reask because I want to make sure because we are at

7    the same place.  That is, you do understand, sir, that if the

8    sentence you receive is ultimately not the sentence that you

9    thought you were receiving, that would not be a basis, that

10   dissatisfaction with your sentence would not be a basis for

11   withdrawing your plea of guilty.  Do you understand that?

12               THE DEFENDANT:  Yes, your Honor.

13               THE COURT:  Sir, I understand that there is a written

14   plea agreement that is entered into between you and your

15   attorney and the attorneys for the government.  In furtherance

16   of that I have been given a document that I've marked Court

17   Exhibit 1.  It is a March 28, 2017 letter from Ms. Reilly and

18   Mr. Solowiejczyk and Mr. Kim to Ms. Scolari.  Do you have a

19   copy of that letter in front of you, sir?

20               THE DEFENDANT:  I do, your Honor.

21               THE COURT:  Sir, the copy that I have has six pages to

22   it.  Can I ask you, please, to turn to the last page of your

23   document and tell me if on yours the sixth page is the last

24   page of your document?

25               THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  There are four signatures on the copy that

2   I have in front of me.  Do you have four signatures on the copy

3   in front of you?

4          THE DEFENDANT:  No, I do not, your Honor.

5          MS. REILLY:  Your Honor, if I might, because of the

6   logistics of the setup, Mr. Lisi signed the original plea

7   agreement you have in front of you and then only then did the

8   government sign, both Mr. Kim and I.  So Mr. Lisi signed in

9   person, but doesn't have a fully signed executed copy.

10         THE COURT:  I understand that now.

11         Ms. Scolari, how would you like to address this?

12  Would you like to come up here and see the document?  Have you

13  seen it?

14         MS. SCOLARI:  I have seen it, your Honor, and I had

15  indicated to Mr. Lisi that if it was possible we would hold the

16  document up to show him the signatures.  I don't know if it

17  will be clear enough for him to see, but perhaps the Court

18  could indicate that the signatures are there.

19         THE COURT:  Mr. Lopez, can I ask you to walk towards

20  the camera and see if you can show this document.

21         Mr. Lisi, do you see the document?

22         THE DEFENDANT:  Your Honor, I see a piece of paper

23  with some writing on it, but it's not a hundred percent clear.

24  If my attorney has seen the signatures, you know, obviously, I

25  trust my attorney to tell me that she has seen the signatures.

1          MS. SCOLARI:  I have seen them.

2          THE COURT:  Mr. Lisi, let me tell you the signatures

3   that I have in front of me.  I have Ms. Reilly as one

4   signatory, I have Mr. Kim, or someone signing on his behalf, as

5   the cochief of the complex frauds unit, and then I have two

6   signatures at the bottom.  I believe one of them is

7   Ms. Scolari's and one of them is yours.  Am I correct that you

8   signed a version of this plea agreement?

9          THE DEFENDANT:  I did, your Honor.

10          MS. SCOLARI:  Judge, actually, he signed that actual

11   agreement.  I brought it back from Fort Dix.  That's his

12   original and my original signatures.

13          THE COURT:  The record will now reflect that.

14          Mr. Lisi, the document that I have indicates that you

15   signed this agreement on Friday, the 31st of March.  Is that

16   correct?

17          THE DEFENDANT:  That's correct, your Honor.

18          THE COURT:  Before you signed this agreement, did you

19   read it, sir?

20          THE DEFENDANT:  I have, your Honor.

21          THE COURT:  Did you understand it?

22          THE DEFENDANT:  I did.

23          THE COURT:  Did you understand it?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  And did you have enough of an opportunity

 1    to discuss this document with Ms. Scolari before you signed it?

 2            THE DEFENDANT:  Yes, your Honor.

 3            THE COURT:  I would like to just review a couple of

 4    the provisions in the agreement with you, sir.  What I would

 5    ask, please, is, can I ask you to turn to page 2 of the

 6    agreement and let me know when you've arrived there.

 7            THE DEFENDANT:  I'm there, your Honor.

 8            THE COURT:  Sir, the very first paragraph on that page

 9    indicates that as part of your plea in this case you are

10    admitting to the forfeiture allegation that is associated with

11    Count One of the indictment and in so doing you are agreeing to

12    forfeit to the United States property that constitutes or is

13    derived from proceeds traceable to the offense.  Am I correct,

14    sir, are you agreeing to forfeit the proceeds of the offense in

15    this case?  This is the very first paragraph on page 2.

16            THE DEFENDANT:  Yes, your Honor.

17            THE COURT:  So do I understand that you are admitting

18    to the forfeiture allegation that is contained at the back of

19    the indictment in this case?

20            THE DEFENDANT:  Yes, your Honor.

21            THE COURT:  Sir, in the next paragraph I'm

22    understanding that what you are agreeing to do is, you are

23    agreeing to make restitution in an amount that I would order at

24    some later date based on the information that I would need to

25    figure out whether there are individuals or entities who have

1    been injured as a result of your conduct.  Are you in fact

2    agreeing to make restitution?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  And do you also understand that the

5    agreement to make restitution would be a condition of

6    supervised release in this case?

7              THE DEFENDANT:  Yes, your Honor.

8              THE COURT:  And, sir, on the remainder of page 2, and

9    then carrying over on to page 3, what I understand this to be

10   are a series of guidelines stipulations.  You and your attorney

11   and the attorneys for the government are agreeing that the

12   sentencing guidelines apply to your case in a particular

13   manner.  Is that your understanding as well, sir?

14             THE DEFENDANT:  Yes, your Honor.

15             THE COURT:  So, the information about the guidelines

16   on pages 2 and 3 is what you and your attorney and the

17   attorneys for the government believe to be the manner in which

18   the guidelines apply to your case.  Is that correct, sir?

19             THE DEFENDANT:  I'm sorry.  Can you repeat that

20   question.

21             THE COURT:  No.  I'll ask the question better.  Is it

22   my understanding that the stipulations here on pages 2 and 3 of

23   the agreement represent how you and your attorney and the

24   attorneys for the government believe the guidelines apply to

25   your particular case.  Is that correct?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Sir, I want you to understand that I'm not

3   a signatory to this plea agreement and I have an independent

4   obligation to calculate the guidelines.  I will do that in

5   connection with your sentencing.  I don't know that I will come

6   up with any different numbers, but I did want you to understand

7   that I am not bound by these stipulations.  Do you understand

8   that, sir?

9          THE DEFENDANT:  Yes, your Honor.

10         THE COURT:  And do you understand that if I come up

11  with a different range than the range that is contained in this

12  agreement, that my coming up with a different range would not

13  be a basis for you to withdraw your guilty plea in this case.

14  Do you understand that, sir?

15         THE DEFENDANT:  Yes, your Honor.

16         THE COURT:  Sir, could I ask you, please, to turn to

17  page 4 of the agreement and let me know when you've gotten

18  there.

19         THE DEFENDANT:  I'm there, your Honor.

20         THE COURT:  Sir, if you look at the very last

21  paragraph on this page, and it carries over onto page 5, what I

22  understand this paragraph to be is a series of waivers that you

23  and the government are entering into with respect to your

24  sentence.  And in each case you and the government are agreeing

25  that if you are sentenced in a particular way, you would be

1    giving up your right to appeal or challenge that component of

2    your sentence.  Is that your understanding of what this

3    paragraph is as well?

4            THE DEFENDANT:  Yes, your Honor.

5            THE COURT:  Let me talk to you about your waiver, sir,

6    since I've been speaking with you this morning.  I am

7    understanding, in the first instance, that you are waiving or

8    giving up your right to appeal or otherwise challenge a

9    sentence of imprisonment that is within or below the stipulated

10   guidelines range of 51 to 63 months.  If I were to sentence you

11   to a term of 63 months' imprisonment or something less than

12   that, you would be giving up your right to appeal or otherwise

13   challenge that piece of your sentence.  Is that correct, sir?

14           THE DEFENDANT:  Yes, your Honor.

15           THE COURT:  I also understand, and I see this on the

16   next page, that you are agreeing not to appeal any term of

17   supervised release that is less than or equal to the statutory

18   maximum of three years.  So if I were to sentence you to a term

19   of supervised release of three years or something less than

20   that, you are agreeing not to appeal that piece of your

21   sentence.  Is that correct, sir?

22           THE DEFENDANT:  Yes, your Honor.

23           THE COURT:  And I also understand that you are

24   agreeing not to appeal any fine that is less than or equal to

25   $75,000.  If I were to impose a fine of $75,000 or something

1    less than that, you are agreeing not to appeal that piece of

2    your sentence.  Is that correct, sir?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  And I did note, I should have mentioned

5    this earlier, I see in this paragraph as well that with respect

6    to the term of imprisonment you are agreeing that the waiver I

7    discussed with you a few moments ago, which is that you would

8    not appeal any term of imprisonment that was 63 months or

9    below, that would apply whether or not I ordered that term of

10   imprisonment to run consecutively to or concurrently with the

11   undischarged portion of imprisonment that you are now serving.

12   Do you understand that, sir?

13             THE DEFENDANT:  Yes, your Honor.

14             THE COURT:  Sir, does this plea agreement contain the

15   complete and total understanding of your plea agreement with

16   the government?

17             THE DEFENDANT:  Yes, your Honor.

18             THE COURT:  Has anything been left out, sir, to the

19   best of your knowledge?

20             THE DEFENDANT:  Not to the best of my knowledge, no,

21   your Honor.

22             THE COURT:  Other than what is contained in this

23   agreement, has anyone made you any promise or offered you any

24   form of inducement in order to get you either to plead guilty

25   or to sign this agreement that I have before me this morning?

1          THE DEFENDANT:  No, your Honor.

2          THE COURT:  Has anyone threatened you or forced you to

3   plead guilty or to sign this plea agreement?

4          THE DEFENDANT:  No, your Honor.

5          THE COURT:  Has anyone made you any promise as to what

6   your ultimate sentence will be?

7          THE DEFENDANT:  No, your Honor.

8          THE COURT:  Sir, could you please tell me in your own

9   words what you did that makes you believe that you are guilty

10  of Count One of the indictment.

11         THE DEFENDANT:  Yes, your Honor.  Between 2009 and

12  2014, I agreed with others to cause an individual to authorize

13  disbursement of money based on what I knew to be false

14  information.  The money was transferred from one bank to

15  another.

16         THE COURT:  Sir, did either of these banks or did this

17  transaction take place in the Southern District of New York?

18         MS. SCOLARI:  Your Honor, the government may have to

19  add to that.  I don't know if Mr. Lisi can answer the venue

20  issue.

21         THE COURT:  Mr. Lisi, let me just repeat to you what

22  Ms. Scolari just said.  One of the issues that I must address

23  is whether or not venue has been met.  I don't know if you have

24  an awareness of any conduct taking place in Manhattan or

25  Westchester or the Bronx.  Perhaps what I'll do, instead, is, I

1   will get the government's proffer regarding venue in this case.

2   Is that all right, sir?

3            THE DEFENDANT:  Yes, your Honor.

4            THE COURT:  Ms. Reilly.

5            MS. REILLY:  Certainly, your Honor.  The government

6   proffers that if we were to proceed to trial in this matter the

7   government would introduce evidence that certain actions in

8   furtherance of the conspiracy took place in the Southern

9   District of New York; specifically, that at least one or more

10  victims of the conspiracy caused money to be transferred from a

11  bank located in Manhattan and that a coconspirator and a victim

12  of the conspiracy met with an attorney seeking to further the

13  objects of the conspiracy at an office in Manhattan.

14           THE COURT:  Mr. Lisi, were you able to hear the

15  prosecutor a moment ago?

16           THE DEFENDANT:  For the most part, your Honor, yes.

17           THE COURT:  What she indicated to me was that the

18  transfer from one bank to another involved a bank that was

19  located in Manhattan and that there was as well a meeting with

20  both a coconspirator and a victim of the conspiracy that took

21  place at an office in Manhattan.  That would seem to satisfy

22  the venue obligation.  Do you agree, sir?

23           THE DEFENDANT:  OK, your Honor.

24           THE COURT:  I don't want you to just agree with me.

25           THE DEFENDANT:  Yes, your Honor.

1           MS. SCOLARI:  Your Honor, I guess I would just

2    reiterate that Mr. Lisi doesn't know.  That's why we have asked

3    the government to proffer.  I certainly don't object to what

4    the government has said.

5           THE COURT:  Mr. Lisi, were you able to hear

6    Ms. Scolari a moment ago?

7           THE DEFENDANT:  Yes, your Honor.

8           THE COURT:  Ms. Scolari, do you know of any valid

9    defense that would prevail at trial or any reason why your

10   client should not be permitted to plead guilty?

11          MS. SCOLARI:  I do not, your Honor.

12          THE COURT:  Mr. Lisi, when I was hearing from you a

13   moment ago I saw that you had some notes written down.  Are

14   these your notes to aid you in speaking with me this morning?

15          THE DEFENDANT:  Yes, your Honor.

16          THE COURT:  The issue that concerned me, sir, I want

17   to make sure you are telling me your words and not someone

18   else's.  These are your words.  Yes, sir?

19          THE DEFENDANT:  Yes, your Honor.

20          THE COURT:  Mr. Lisi, when you agreed with this

21   person, the person with whom you had the agreement to cause

22   someone else to authorize disbursements, the person with whom

23   you had the agreement, this person wasn't a government agent or

24   a law enforcement officer, right?  They were a civilian,

25   correct?

 1             THE DEFENDANT:  To the best of my knowledge, your

 2     Honor.

 3             THE COURT:  I understand that.  And when you agreed

 4     with this person to cause someone else to authorize

 5     disbursements based on false information, did you understand

 6     that what you were doing was wrong and illegal?

 7             THE DEFENDANT:  Yes, your Honor.

 8             THE COURT:  Ms. Reilly, is there an additional

 9     question that you would like me to ask?

10             MS. REILLY:  No, your Honor.

11             THE COURT:  Is there an obligation that the bank be

12     federally insured or has that issue been resolved?

13             MS. REILLY:  Your Honor, I don't think that's an issue

14     for this charge.

15             THE COURT:  Would you please summarize briefly what

16     types of evidence would be introduced if this case were to

17     treed to trial.

18             MS. REILLY:  Certainly, your Honor.  If we were to

19     proceed to trial the government expects that it would call

20     witnesses to testify, including lay witnesses, victims, and

21     coconspirators involved in the conspiracy charged in Count One,

22     as well as law enforcement witnesses who would testify to the

23     flow of funds that resulted from the conspiracy.  The

24     government also expects it would introduce documentary records,

25     including purported legal documents and bank records that were

1          used in furtherance of the conspiracy.

2                    THE COURT:  Mr. Lisi, were you able to hear the

3          prosecutor a moment ago?

4                    THE DEFENDANT:  Yes, your Honor, for the most part.

5          It kind of went out in the end, the last part.

6                    THE COURT:  I believe she was indicating that the

7          evidence at trial would include lay witnesses, coconspirators,

8          documentary evidence, and evidence showing the flow of money

9          between accounts, and evidence demonstrating the falsity of

10         certain of the statements among other things.  Do you

11         understand that's the evidence that would be introduced at the

12         trial?

13                   THE DEFENDANT:  Yes, your Honor.  Thank you.

14                   THE COURT:  Ms. Scolari, do you agree that there is a

15         sufficient factual predicate for the guilty plea?

16                   MS. SCOLARI:  I do, your Honor.

17                   THE COURT:  Is there any reason why I should not

18         accept it this morning?

19                   MS. SCOLARI:  No, your Honor.

20                   THE COURT:  Ms. Reilly, do you agree that there is a

21         sufficient factual predicate for a guilty plea?

22                   MS. REILLY:  I do, your Honor.

23                   THE COURT:  Is there any reason why I should not

24         accept it?

25                   MS. REILLY:  No.

1          THE COURT:  Mr. Lisi, at this time do you wish to

2    enter a plea of guilty to Count One of the indictment?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  Sir, because you've acknowledged that you

5    are in fact guilty as charged in Count One, because I'm

6    satisfied that you know of your rights, including your right to

7    go to trial, and that you're aware of the consequences of a

8    guilty plea, including the penalties that may be imposed, and

9    because I find that you are knowingly and voluntarily pleading

10   guilty, I'm accepting your guilty plea, I will enter a judgment

11   of guilty on Count One of the indictment.

12         Now, Ms. Scolari, how do we think the probation office

13   is going to be -- will they undertake an interview by phone?

14         MS. SCOLARI:  There are several possibilities.  They

15   could actually travel to Fort Dix.  I don't know if the budget

16   or their offices provide for that.  I think they can do an

17   interview by phone, if we can set it up with the facility.

18   Normally these interviews take about two hours, and I don't

19   know if we can set up a legal call.  But perhaps, if we need

20   to, we can ask for the Court to intervene.

21         The other possibility, although I don't know if they

22   will do that in this case, is, sometimes they ask the

23   jurisdiction where Mr. Lisi is to do the interview.  That would

24   be somebody apart from the person that would write up the

25   report.  The two pieces would be put together by the probation

 1    officer and the Southern District.

 2            THE COURT:  Ms. Scolari, would you want to be present,

 3    at least by telephone, for any interview?

 4            MS. SCOLARI:  Yes, I would like to be present.  Thank

 5    you.

 6            THE COURT:  Mr. Lisi, as has been suggested by the

 7    questions I was just discussing with Ms. Scolari, the next step

 8    in this process will be preparation for sentencing, and the

 9    probation office will want to interview you in connection with

10    the presentence investigation report that it will prepare.  And

11    I will order that the interview not take place unless

12    Ms. Scolari is present either in person or by phone for that

13    interview, and we will work with the probation office to find

14    the best way of obtaining the information they need for their

15    report from you, whether that be an in-person visit, telephone

16    or something else.  We will make sure that they understand your

17    situation so that they can work with you and with your attorney

18    in the best way to get the information that is needed.

19            Sir, my only thought to you on this front, and

20    certainly you are going to get your legal advice from

21    Ms. Scolari, but I would just ask that to the extent that you

22    speak with the probation office, please see that what you tell

23    them is as accurate and complete as it can be.  I say that

24    simply because the presentence investigation report is

25    something I rely on very heavily at sentencing.  So that report

1    is most useful to me when it is complete and accurate.  And you

2    will have an opportunity before I see the report to review it

3    with Ms. Scolari, and if there are things that you'd like

4    corrected or modified or objected to, you'll have an

5    opportunity to do that before I get the report so that I will

6    have everyone's complete views about the information that is

7    contained in the report.

8            Mr. Lopez, may I please have a sentencing date.

9            THE DEPUTY CLERK:  Yes, your Honor.

10           MS. SCOLARI:  I'm sorry for interrupting.  Your Honor,

11   it occurred to me that since Mr. Lisi has been incarcerated,

12   since his last report, the probation officer may not

13   reinterview him, but I would ask that the Court require them to

14   do so because there have been multiple changes in

15   circumstances, despite the fact that he's been incarcerated.

16   His health, his mother's health, and I think other issues that

17   are pertinent.  Perhaps if we need the Court to direct a

18   reinterview, even if it's by phone, I would appreciate it.

19           THE COURT:  Certainly.  I think you will actually be

20   speaking with the probation office in the first instance.  If

21   you get any pushback, let me know who I need to speak to.  And

22   I understand the reasons why you want to have a reinterview,

23   and I think that is appropriate here.

24           MS. SCOLARI:  Thank you.

25           THE COURT:  Given that, Ms. Scolari, is the typical

1    100 days enough time or should we go out a little further?

2          MS. SCOLARI:  Your Honor, I don't know how much time

3    probation would need to do the report.  I guess what I would

4    say, since Mr. Lisi is serving a sentence, that we would prefer

5    to keep it within the normal range, subject to a request for

6    more time if we feel we need it.

7          THE COURT:  That's what I was thinking as well.

8          Mr. Lopez, may I have a date, please.

9          THE DEPUTY CLERK:  Yes, your Honor.  Wednesday, July

10   19, at 3 p.m.

11         THE COURT:  Ms. Reilly, may I ask you, please, to get

12   the factual statement to the probation office in the next week

13   or so.

14         MS. REILLY:  Yes, your Honor.

15         THE COURT:  Ms. Scolari, could you please begin the

16   process of arranging for Mr. Lisi's interview in the next two

17   weeks or so.

18         MS. SCOLARI:  Yes, your Honor.

19         THE COURT:  And based on my individual rules of

20   practice, I would ask for the defense sentencing submission two

21   weeks in advance of sentencing and the government's responsive

22   submission one week in advance of sentencing.  Please let me

23   know if there are any problems meeting that.

24         Ms. Scolari, perhaps this is something you may want to

25   speak about with your client, but would you anticipate that the

1    sentencing would be by video conference as well?

2            MS. SCOLARI:  That is likely, but I would like to

3    discuss it with Mr. Lisi.

4            THE COURT:  Of course.  Any number of developments can

5    happen between now and then.  But I would like you to let me

6    know closer to the date.

7            MS. SCOLARI:  Yes.

8            THE COURT:  Ms. Reilly, is there anything else you

9    would like to address this morning with me?

10           MS. REILLY:  Nothing further from the government, your

11   Honor.

12           THE COURT:  Ms. Scolari, anything else this morning?

13           MS. SCOLARI:  No.  Thank you, your Honor.

14           THE COURT:  Mr. Lisi, thank you very much.  We will be

15   talking to you in the next couple of weeks.

16           THE DEFENDANT:  Thank you, your Honor.

17           THE COURT:  We are done.  Thank you.

18                              o0o

19

20

21

22

23

24

25