UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
:
UNITED STATES OF AMERICA            :
:
-v.-                 :            15 Cr. 457 (KPF)
:
KATERINA ARVANITAKIS             :
:
Defendant.        :
-------------------------------------------------------------x
:
GORDON & HAFFNER, LLP            :
:
Petitioner.       :
-------------------------------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT OF THE GOVERNMENT'S MOTION TO DISMISS THE THIRD-PARTY PETITION OF GORDON & HAFFNER, LLP**


GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York


Katherine Reilly
Noah Solowiejczyk
Assistant United States Attorneys
       - Of Counsel –

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ iii

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND ......................................................................................................................... 2

A.    Procedural History .......................................................................................................... 2

1. Criminal Conduct and Indictment of Katerina Arvanitakis ............................................ 2

2. Arvanitakis's Guilty Plea and the Subsequent Order of Forfeiture…...………………… 5

ARGUMENT ............................................................................................................................... 6

A.    Applicable Law ............................................................................................................... 6

1.   Legal Standard for a Motion to Dismiss ........................................................................ 6

2.   Ancillary Proceedings and Third-Party Claims to Forfeited Property .......................... 9

a)   Standing Under the Forfeiture Laws ..................................................................... 10

3.   Applicable New York State Law .................................................................................. 11

a)   Charging Lien Under New York Judiciary Law § 475 ......................................... 11

b)   A common law retaining lien is passive and does not grant a property interest ... 13

B.    G&H's Petition Should Be Dismissed for Lack of Standing ....................................... 13

a)   G&H does not possess a charging lien against the Claimed Funds ...................... 13

b)   A retaining lien does not confer a legal interest in the Claimed Funds ............... 15

CONCLUSION .......................................................................................................................... 16

# TABLE OF AUTHORITIES

## CASES

*Alliance for Environmental Renewal, Inc. v. Pyramid Crossgates Co.*,
436 F.3d 82 (2d Cir. 2006) ........................................................................................9

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) ......................................................................................7, 8, 14

*Banque Indosuez v. Sopwith Holdings*,
98 N.Y.2d 34 (2002) ...............................................................................................12

*Bell Atlantic Corp. v. Twombly*,
50 U.S. 544 (2007) ....................................................................................................7

*Brauer v. Hotel Assocs., Inc.*,
192 A.2d 831 (N.J. 1963) .......................................................................................13

*Bulk Oil Transps., Inc. v. Robins Dry Dock & Repair Co.*
277 F. 25 (2d Cir. 1921)..........................................................................................13

*DSI Assocs. LLC v. United States*,
496 F.3d 175 (2d Cir. 2007) .....................................................................................9

*Dayan v. Dayan*,
66 N.Y.S. 3d 850 (Sup. Ct. 2017)......................................................................13, 15

*DeAlmeida v. United States*,
459 F.3d 377 (2d Cir. 2006) ...................................................................................10

*Desmond v. Socha*,
327 N.Y.S.2d 178 (1970), aff'd, 337 N.Y.S.2d (1972) ...........................................12

*EEOC v. Concentra Health Servs., Inc.*,
496 F.3d 773 (7th Cir. 2007) ................................................................................8, 9

*Harley & Browne v. Ressler & Ressler*,
957 F. Supp. 44 (S.D.N.Y. 1997) .......................................................................12, 15

*In re 9 Stevens Café, Inc.*,
161 B.R. 96 (S.D.N.Y. 1993) ...................................................................................12

*In re Haar*,
698 A.2d 412 (D.C. 1997) ..................................................................................12, 15

*In re Heinsheimer*,
214 N.Y. 361 (1915) ................................................................................................13

*In re Wilson*,
12 F. 235 (S.D.N.Y. 1882) ......................................................................................13

*Jones v. Bock*,
549 U.S. 199 (2007) ..................................................................................................8

*Kaplan v. Reuss*,
495 N.Y.S.2d 404 (1985), *aff'd,* 68 N.Y.2d 693 (1986) ...........................................12

*Luckett v. Bure*,
290 F.3d 493 (2d Cir. 2002) ......................................................................................9

*Malik v. Meissner*,
82 F.3d 560 (2d Cir. 1996) ........................................................................................9

*Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
322 F.3d 147 (2d Cir. 2003) ......................................................................................8

*Pacheco v. Serendensky*,
393 F.3d 348 (2d Cir. 2004).......................................................................................7

*Papasan v. Allain*,
478 U.S. 265 (1986) ..................................................................................................8

*People v. Keeffe*
50 N.Y.2d 149 (1980) ..............................................................................................13

*Soo Line R.R. Co. v. St. Louis Southwestern Ry. Co.*,
125 F.3d 481 (7th Cir. 1997) .....................................................................................8

*Sprole v. Sprole*,
151 A.D.3d 1413 (N.Y. App. Div. 2017) .................................................................12

*United States* v. *All Assets Held at Bank Julius Baer & Co.*,
772 F. Supp. 2d. 191 (D.D.C. 2011) ........................................................................10

*United States v. Butler*,
No. 08-CR-370 (JBW)(RER), 2012 WL 5386039 (E.D.N.Y. June 27, 2012) ...........11

iv

*United States v. Egan*,
811 F. Supp.2d 829 (S.D.N.Y. 2011) ........................................11

*United States v. Espada*,
128 F.Supp.3d 555 (E.D.N.Y. 2015) ........................................11

*United States v. J. H. W. & Gitlitz Deli & Bar, Inc.*,
499 F. Supp. 1010 (S.D.N.Y. 1980) ........................................11, 12

*United States v. One-Sixth Share of James Bulger*,
326 F.3d 36 (1st Cir. 2001) ........................................10

*United States v. Mendez*,
No. 07-CR-107 (ARR), 2009 WL 1706354 (E.D.N.Y. June 17, 2009) ........................................7

*United States v. Ribadeneira*,
105 F.3d 833 (2d Cir. 1997) ........................................10

*Desmond v. Socha*,
38 A.D.2d 22 (N.Y. App. Div. 1971), *aff'd*, 337 N.Y.S.2d (1972) ........................................12

*United States v. Timley*,
507 F.3d 1125 (8th Cir. 2007) ........................................11

## STATUTES AND RULES

18 U.S.C. § 2 ........................................5

18 U.S.C. § 371 ........................................5

18 U.S.C. § 1028(a)(1) ........................................5

18 U.S.C. § 1028A(c)(5) ........................................5

18 U.S.C. § 1343 ........................................5

18 U.S.C. § 1349 ........................................5

18 U.S.C. § 1956(h) ........................................5

21 U.S.C. § 853(n) ........................................9, 10, 15, 16

28 U.S.C. § 2461(c) ........................................9

Fed. R. Civ. P. 12(b) ..................................................................................................7, 9

Fed. R. Crim. P. 32.2 ..............................................................................................7, 8, 9

New York Judiciary Law § 475 ...................................................................1, 11, 12, 15

The United States of America (the "Government"), by and through its attorney Geoffrey S. Berman, United States Attorney for the Southern District of New York, respectfully submits this memorandum of law in support of its motion to dismiss the third-party petition of Gordon & Haffner, LLP ("G&H").

## PRELIMINARY STATEMENT

In its petition (the "G&H Petition"), G&H seeks an interest in a portion of $450,000 in United States currency which was held in the TD Bank Account No. 427-4034051 in the name of CSH Ventures LLC Settlement Fund, Gordon & Haffner, LLP, Attorney Trust Account (the "Specific Property").  Specifically, G&H claims an interest in the amount of $60,000 in United States currency (the "Claimed Funds").[1]

 G&H contends that it has a legal interest in the Claimed Funds, and thus has standing to bring its claim, as a result of (1) a charging lien under New York Judiciary Law § 475 and (2) a common law retaining lien.  Both liens are purportedly to satisfy fees due to G&H for legal services rendered to its client CSH Ventures, LLC ("CSH").  G&H's own allegations demonstrate no charging lien exists, however, and the common law retaining lien asserted by G&H does not create a legal interest in the Claimed Funds under New York law.  Accordingly, G&H lacks a legal interest in the Claimed Funds, and the G&H Petition should be dismissed for lack of standing.

With respect to the charging lien, New York law provides for such a lien only as to funds which are the proceeds of the attorney's own services in connection with a legal action.  While G&H asserts that the Specific Property is the proceeds of legal services the firm rendered in

---

[1] Victims Paul and Nadine Bibbo (née Lugo) also filed a verified petition on May 24, 2018 asserting sole ownership of all of the Specific Property.  (Dkt. No. 176).

connection with a New York State civil action filed on behalf of CSH in 2012, and performed "from about February 2012 through about May 2012,"[2] (Petition ¶¶ 2, 3), G&H also admits that the Specific Property was received by G&H on or about June 20, 2011, before the legal services in question began being rendered and, in fact, before the relevant legal action was even filed, let alone concluded.  (Petition ¶ 5).  Accordingly, G&H's own allegations demonstrate that the Specific Property was not derived from the legal action brought by G&H,[2] and there can be no charging lien as to the Claimed Funds under New York law.

G&H's alleged retaining lien, meanwhile, is simply insufficient to create a legal interest in the Claimed Funds as a matter of law. Under New York law, a retaining lien is passive and merely allows an attorney to retain a client's papers and property for purposes of securing payment from a client.  A retaining lien does not confer any legal interest in the property itself.

The Court should therefore dismiss the G&H Petition for lack of standing

## BACKGROUND

**A. <u>Procedural History</u>**

1. <u>Criminal Conduct and Indictment of Katerina Arvanitakis</u>

At all times relevant, Arvanitakis was an attorney admitted to practice in the State of New York.  *See* Government Sentencing Memorandum ("GSM") p.1 (Dkt. No. 157).[3]  Arvanitakis's co-defendant, Brandon Lisi (an attorney who had been disbarred in New York State in or about July 2011), worked at the offices of Arvanitakis.  From at least in or about 2010 through 2014,

---

[2] In fact, the Specific Property was obtained from Paul Bibbo and Nadine Bibbo by defendant Arvanitakis in the course of carrying out a wire fraud scheme along with her co-defendant in the underlying criminal action, Brandon Lisi.  The Specific Property was subsequently transferred into the Attorney Trust Account controlled by G&H.

[3] Arvanitakis was disbarred on or about May 17, 2017, following her guilty plea in the instant case.

Arvanitakis and Lisi worked together to defraud various clients of theirs by soliciting funds from these clients based on fraudulent misrepresentations about how the solicited funds were going to be used. (GSM pp. 1, 2).

Among the individuals defrauded by Lisi and Arvanitakis were a husband and wife named Paul Bibbo and Nadine Lugo.  In or about 2010, Bibbo retained Arvanitakis as legal counsel in connection with a legal dispute concerning a property located in Queens County, New York.  (GSM p. 6).  From approximately in or about 2010 up to and including in or about 2013, Arvanitakis and Lisi induced Bibbo and Lugo to send hundreds of thousands of dollars, including by wire transfer, to bank accounts controlled by Arvanitakis, based on representations that the funds would be used for purported investment opportunities, including investments in particular real estate properties.  In truth and fact, a significant portion of the funds provided by Bibbo and Lugo were diverted for purposes other than the purported investment opportunities, including the acquisition of the real estate properties, as had been previously promised.  (GSM p. 6)

In or about April 2011, Bibbo and Lugo wired approximately $650,000 to an account controlled by Arvanitakis, purportedly to invest in the purchase of a property in Cold Spring Harbor (the "Cold Spring Harbor Property").[4]  (GSM p. 6).  Lisi and Arvanitakis later informed Bibbo and Lugo that they could not yet invest in the Cold Spring Harbor Property and proposed instead that they invest in a catering hall located in Long Island, New York (the "Catering Hall Property").  Lisi and Arvanitakis represented that the investment in the Catering Hall Property

_____

[4] As the Court is aware, Lisi was arrested and separately charged by the Office of the District Attorney for Suffolk County in connection with fraudulent real estate and mortgage loan transactions in 2007 and 2008 involving, among other properties, the Cold Spring Harbor Property.

would be a short-term investment that would allow Bibbo and Lugo to have the invested funds—approximately $450,000—returned to them, with a significant additional return, within a short period of time, before the investment in the Cold Spring Harbor Property would be available. (GSM pp. 6-7). Bibbo and Lugo made what they believed to be the investment in the Catering Hall Property, transferring the funds to an account controlled by Arvanitakis. The $450,000 was then transferred to the CSH Ventures LLC Settlement Fund Attorney Trust Account controlled by Gordon & Haffner LLP (the "Trust Account") in connection with the purported Catering Hall Property transaction. When the specified period of time had passed, Bibbo and Lugo began to seek the return of their money from Lisi and Arvanitakis, who assured Bibbo and Lugo that though they could not get their money back at that time, they would be provided additional returns when the money was eventually returned. (GSM p. 7).

In or about 2012, Lisi and Arvanitakis induced Bibbo and Lugo to transfer additional funds as to two potential real estate investments, based, in part, on misrepresentations about those purported investment opportunities: a property located in Astoria, New York (the "Astoria Property") and a property located in Sag Harbor, New York (the "Sag Harbor Property").[5] In fact, Bibbo and Lugo did not obtain any ownership interest in either the Astoria Property or the Sag Harbor Property. (GSM pp. 7, 8).

From in or about 2010 through in or about 2014, Lisi and Arvanitakis used the funds that they obtained by fraud from the victims of the fraud scheme, including Bibbo and Lugo, in the following ways, among others: to repay debts that Lisi and Arvanitakis owed; to replenish bank accounts they controlled that carried negative balances; for personal expenditures; to transfer to

---

[5] The charges brought against Lisi by the Office of the District Attorney for Suffolk County in connection with fraudulent real estate and mortgage loan transactions in 2007 and 2008 also related to, among other properties, the Sag Harbor Property.

relatives; and to make substantial cash withdrawals, all contrary to the representations made to the victims and without disclosing the true uses of the funds to the victims.  (GSM pp. 8-9).

On May 3, 2017 a grand jury sitting in this District returned a five-count Superseding Indictment (the "Indictment") against defendant Arvanitakis charging her with one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349 ("Count One"); one count of wire fraud in violation of 18 U.S.C. §§ 1343 and 2 ("Count Two"); one count of conspiracy to commit bankruptcy fraud and to make false oaths and claims in bankruptcy in violation of 18 U.S.C. § 371 ("Count Three"); one count of aggravated identity theft in violation of 18 U.S.C. §§ 1028(a)(1), 1028A(c)(5), and 2 ("Count Four"); and one count of conspiracy to launder money in violation of 18 U.S.C. § 1956(h) ("Count Five").  (Dkt. No. 70).

> 2.  Arvanitakis's Guilty Plea and the Subsequent Order of Forfeiture

On May 16, 2017, Arvanitakis pleaded guilty to Count Two of the Indictment.  (Dkt. No. 80). On March 20, 2018 this Court entered an Amended Consent Preliminary Order of Forfeiture as to Specific Property/Money Judgment (the "Order of Forfeiture" ) acknowledging, among other things, Arvanitakis's consent to the forfeiture of a sum of money equal to $1,285,393 in United States currency, representing the amount of proceeds obtained as a result of the wire fraud offenses charged in Count Two of the Indictment (the "Money Judgment").  Arvanitakis further consented to the forfeiture of all of her right, title and interest in the Specific Property as constituting, or being derived from, proceeds traceable to the commission of the offense charged in Count Two of the Indictment.  Amended Consent Preliminary Order of Forfeiture as to Specific Property/Money Judgment (Dkt. No. 166).

On May 24, 2018, victims Paul Bibbo and Nadine Bibbo (née Lugo) filed a verified petition with the Court wherein they asserted sole ownership over the Specific Property (the

"Bibbo Petition").  Specifically, they stated that on or about April 8, 2011, they transferred $450,000 in United States currency by wire into New York Commercial Bank Account Number 8150000477, held by and in the name of Katerina N. Arvanitakis, Attorney at Law, IOLA Account from the Capital One Bank Account Number 3216005060, held in the name of Nadine R. Lugo.  (Bibbo Petition ¶5 (Dkt. No. 176)).  On that same day, they transferred $200,000 in United States currency by wire into New York Commercial Bank Account Number 8150000477, held by and in the name of Katerina N. Arvanitakis, Attorney at Law, IOLA Account from the TD Bank Account Number 4245868174, held in the name of Nadine Lugo.  (Bibbo Petition ¶ 6). The Bibbo Petition further states that on or about June 20, 2011, Nadine Lugo signed an escrow release in the amount of $450,000 in United States currency authorizing the transfer of the funds to an escrow agent, Steven R. Haffner, who had been referred to the victims by Arvanitakis. (Bibbo Petition ¶ 7).  The funds were to be held in escrow for a purported real estate transaction involving the Catering Hall Property as described above.  However, the real estate transaction with respect to the Catering Hall Property was never completed, and the funds were never returned to the victims.  (Bibbo Petition ¶ 8).

On May 30, 2018, Gordon & Haffner, LLP by Steven R. Haffner, a partner, filed the G&H Petition, asserting an ownership interest in $60,000 in United States currency of the Specific Property, the Claimed Funds, and requesting remission and mitigation of the Order of Forfeiture in the amount of the Claimed Funds.

## ARGUMENT

G&H has not alleged a legal interest in the Claimed Funds and therefore lacks standing to pursue its claim in this ancillary proceeding.  The G&H Petition should be dismissed.

A.      **Applicable Law**

1.  Legal Standard for a Motion to Dismiss

Federal Rule of Criminal Procedure 32.2(c)(1) authorizes the Government to move to

dismiss a petition for lack of standing or for failure to state a claim before the parties are

permitted to conduct discovery on the petition.  The Rule states, in relevant part:

> (A)      In the ancillary proceeding, the court may, on motion, dismiss the
> petition for lack of standing, for failure to state a claim, or for any other
> lawful reason.  For purposes of the motion, the facts set forth in the petition
> are assumed to be true.

> (B)      After disposing of any motion filed under Rule 32.2(c)(1)(A) and
> before conducting a hearing on the petition, the court may permit the parties
> to conduct discovery in accordance with the Federal Rules of Civil
> Procedure if the court determines that discovery is necessary or desirable to
> resolve factual issues . . . .

Fed. R. Crim. P. 32.2(c)(1)(A) and (B).

A motion to dismiss a third-party petition in a criminal forfeiture proceeding prior to

discovery or a hearing is treated like a motion to dismiss a civil complaint under Federal Rule of

Civil Procedure 12(b).  *See, e.g.*, *Pacheco v. Serendensky*, 393 F.3d 348, 352 (2d Cir. 2004);

*United States v. Mendez*, No. 07-CR-107 (ARR), 2009 WL 1706354, at *2 (E.D.N.Y. June 17,

2009).  Under Rule 12(b)(6), a petition should be dismissed if it "fail[s] to state a claim upon

which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Generally speaking, a Rule 12(b)(6)

motion to dismiss should be granted if the complaint does not "contain sufficient factual matter,

accepted as true to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949.

"Factual allegations must be enough to raise a right to relief above the speculative level . . . on

the assumption that all the allegations in the complaint are true (even if doubtful in fact)."
*Twombly*, 550 U.S. at 555.

The Court need not, however, accept as true a legal conclusion or a legal conclusion couched as a factual allegation. *See Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation."))). Ultimately, whether a complaint states a plausible claim for relief is a context-specific determination that requires "the reviewing court to draw on its judicial experience and common sense," and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 129 S. Ct. at 1950 (citations omitted).

In the forfeiture context, a court determining whether a petition states a claim must assume the factual allegations in the petition to be true. *See* Fed. R. Crim. P. 32.2(c)(1)(A). As in the civil context, then, a petitioner is bound by the allegations presented in his petition. *See Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (parenthetically quoting *Soo Line R.R. Co. v. St. Louis Southwestern Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997) for the proposition that a "'plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts,' and 'judicial efficiency demands that a party not be allowed to controvert what it has already unequivocally told to a court by the most formal and considered means possible'"); *see also Jones v. Bock*, 549 U.S. 199, 215 (2007) ("[i]f the allegations [in a complaint], for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim."); *EEOC v. Concentra Health Servs.,*

*Inc.*, 496 F.3d 773, 777 (7th Cir. 2007) (noting plaintiff had initially "pleaded itself out of court" by pleading a Title VII claim that included details entitling defendant to dismissal).

On a motion to dismiss for lack of standing pursuant to Rule 12(b)(1), meanwhile, the plaintiff bears the burden of establishing that subject matter jurisdiction exists over his complaint.  *See Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996); *see generally All. for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 87-88, n.6 (2d Cir. 2006).  In deciding such a motion, this Court may consider evidence outside the pleadings.  *See Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002).

### 2. Ancillary Proceedings and Third-Party Claims to Forfeited  Property

The criminal forfeiture proceedings in this case are governed by Federal Rule of Criminal Procedure 32.2 and 21 U.S.C. § 853.  *See* 28 U.S.C. § 2461(c).  Under Rule 32.2, once a criminal defendant is convicted of the offenses giving rise to the forfeiture allegations, either by trial or plea, the district court must enter a preliminary order of forfeiture.  The preliminary order divests the criminal defendant of any right in the property, and requires the Government to publish notice of its intent to forfeit the property and, where practicable, to send individual notice to third parties with a potential or asserted legal interest in the property.  *See* 21 U.S.C. § 853(n)(1); Fed. R. Crim. P. 32.2(b).

After the court enters a preliminary order of forfeiture, the ancillary proceedings procedure set forth in section 853(n) provides the exclusive means by which a third party may claim an interest in property forfeited in a criminal case, and the only forum in which such a claim may be adjudicated.  *See, e.g., DSI Assocs. v. United States*, 496 F.3d 175, 183 (2d Cir. 2007) (following other circuits in holding that "third parties may not intervene during criminal forfeiture proceedings to assert their interest in the property being forfeited," and that section

853(n) "provides the exclusive means by which a third party may lay claim to forfeited assets after the order of forfeiture has been entered"); *see also DeAlmeida v. United States*, 459 F.3d 377, 381 (2d Cir. 2006).

  a)  *Standing Under the Forfeiture Laws*

To proceed with a claim in an ancillary proceeding, a claimant must have a legal interest in specific property, as opposed to a general interest as a creditor.  *See United States v. Ribadeneira*, 105 F.3d 833, 835-36 (2d Cir. 1997) (per curiam).  That is, in order to contest the forfeiture, a petitioner must establish that he has a "legal interest in" the property, as required by § 853(n)(2).  This subsection states, in part:

> Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may . . . petition the court for a hearing to adjudicate the validity of this alleged interest in the property.

21 U.S.C. § 853(n)(2).

Even holding an *in personam* judgment against a party does not confer an interest sufficient to assert a claim against that party's assets in a forfeiture action.  *See United States v. All Assets Held at Bank Julius Baer & Co.*, 772 F. Supp. 2d. 191, 199 (D.D.C. 2011) (holding that the holder of an *in personam* judgment against participant company in criminal enterprise did not have an ownership interest in specific property, as required to establish standing in forfeiture action); *see also United States* v. *One-Sixth Share of James Bulger*, 326 F.3d 36, 44 (1st Cir. 2003) (stating that even if claimants had secured personal judgment against defendant who owned shares of lottery winnings forfeited to Government, such judgment would not be a secured interest against any particular asset that defendant owned and would be outside the scope of "owner or lienholder" required for standing) (citations omitted).

In order to determine the nature and extent of a claimant's interest in the property subject

to forfeiture, the court must look to the law of the jurisdiction that created the property right. *United States v. Egan*, 811 F. Supp.2d 829, 838 (S.D.N.Y. 2011); *see also United States v. Butler*, No. 08 Cr. 370 (JBW) (RER), 2012 WL 5386039, at *5 (E.D.N.Y. June 27, 2012) ; *United States v. Espada*, 128 F.Supp.3d 555, 561 (E.D.N.Y. Sept. 2, 2015).  If the claimant has no interest in the specific property under state law, "the inquiry ends, and the claim fails for lack of standing." *United States v. Timley*, 507 F.3d 1125, 1130 (8th Cir. 2007).

  3. <u>Applicable New York State Law</u>

  G&H's claim hinges on two liens available to attorneys under New York state law:  a charging lien under New York Judiciary Law § 475 and a common law retaining lien.

  *a) Charging Lien Under New York Judiciary Law § 475*

  A charging lien, originating from common law and codified under New York Judiciary Law § 475, grants an attorney a lien on a client's cause of action from inception through judgment.  The statute provides:

> From the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department, except a department of labor, or the service of an answer containing a counterclaim, or the initiation of any means of alternative dispute resolution including, but not limited to, mediation or arbitration, or the provision of services in a settlement negotiation at any stage of the dispute, the attorney who appears for a party has a lien upon his or her client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination.  The court upon the petition of the client or attorney may determine and enforce the lien.

New York Judiciary Law § 475.  The charging lien attaches to a fund or proceeds created by the attorney's services, out of which the attorney may then be paid.  *United States v. J. H. W. &*

*Gitlitz Deli & Bar, Inc.,* 499 F. Supp. 1010, 1014 (S.D.N.Y. 1980).  However, if the attorney

only defends an interest, or her services do not create a fund or proceeds to which a lien can

attach, there can be no lien.  *Desmond v. Socha*, 38 A.D.2d 22, 23-24 (N.Y. App. Div. 1971),

*aff'd*, 337 N.Y.S.2d (1972) (citations omitted).  Because the charging lien only attaches to the

fund created as a result of a particular action or proceeding, the lien applies only to services

rendered in that particular case and not to general balances due the attorney.  *See Banque*

*Indosuez v. Sopwith Holdings*, 98 N.Y.2d 34 (2002).

   Unlike charging lien provisions in some other states, New York law does not require an

attorney to file or record the lien in order to perfect it.  *In re 9 Stevens Café, Inc.*, 161 B.R. 96, 98

(Bankr. S.D.N.Y. 1993).  In order to enforce the lien, however, an attorney must petition the

court in the underlying case for a determination of the amount of the lien and for enforcement.

The relevant statute provides: "The court upon the petition of the client or attorney may

determine and enforce the lien."  New York Judiciary Law § 475; *see also Sprole v. Sprole*, 151

A.D.3d 1413, 1414 (N.Y. App. Div. 2017) ("[E]nforcement of a charging lien is properly

pursued by way of motion within the action to which it pertains.") (citations omitted).  An

attorney may bring a § 475 petition to enforce a charging lien either while the underlying action

is pending or in a separate lawsuit.  In cases where the attorney does not seek enforcement of the

lien within a reasonable amount of time, however, courts can refuse to enforce a charging lien.

*See Harley & Browne v. Ressler & Ressler*, 957 F. Supp. 44, 49 (S.D.N.Y. 1997) (finding that

attorney's twenty-seven month delay to seek enforcement of charging lien rendered enforcement

improper); *Kaplan v. Reuss*, 113 A.D.2d 184, 187 (N.Y. App. Div. 1985), *aff'd,* 68 N.Y.2d 693,

(1986) ("[I]f the attorney fails to enforce the lien within a reasonable time . . . the lien will be

deemed waived and the attorney relegated to a plenary action against the client for any fees."

(citations omitted)).

> *b)  A common law retaining lien is passive and does not grant a property interest.*

An attorney's common law retaining lien entitles the attorney to retain all papers, securities or money belonging to the client which come into his possession in the course of his professional employment until the amount of his fee is fixed by agreement or by litigation and is paid.  *People v. Keeffe,* 50 N.Y.2d 149, 155-56 (1980).  Unlike a charging line, a retaining lien grants the attorney only the right to hold client property until fees are paid or adequate security is given.  "It is termed a 'passive' lien since it cannot be actively enforced through legal proceedings, and rests wholly upon the right to retain possession until the bill is paid." *Brauer v. Hotel Assocs., Inc.*, 192 A.2d 831, 833–34 (N.J. 1963) (citing *Bulk Oil Transps., Inc. v. Robins Dry Dock & Repair Co.*, 277 F. 25 (2d Cir. 1921); *In re Heinsheimer,* 214 N.Y. 361 (1915); *In re Wilson*, 12 F. 235, 238 (S.D.N.Y. 1882)).  A retaining lien is not in and of itself enforceable against property, and it does not grant an ownership interest in particular property.  *In re Haar*, 698 A.2d 412, 416 n.4 (D.C. 1997) ("Under the retaining lien regime . . .  the client retains all interest and ownership in the money or property the attorney holds.").  In addition, because a retaining lien cannot be actively enforced, a hearing is required in the court presiding over the underlying matter to determine the fee due.  *See Dayan v. Dayan*, 66 N.Y.S.3d 850, 852 (Sup. Ct. 2017) ( "In New York State an attorney has the right at common law to secure a retaining lien on a file to secure payment pending a hearing to establish a security interest if available for counsel to secure a fee…").

**B.      G&H's Petition Should Be Dismissed For Lack of Standing.**

1.      G&H does not possess a charging lien against the Claimed Funds.

G&H alleges that the Claimed Funds "(to the extent of approximately $35,000.00) are

proceeds of CSH Ventures, LLC's cause of action" filed in the Supreme Court of the State of New York, County of Nassau, captioned *CSH Ventures, LLC v. JAX Ventures, LLC*, index no. 2437/2012 (the "CSH Action"). (G&H Petition ¶¶ 2, 3). G&H further alleges that it therefore holds a charging lien over the Claimed Funds. G&H's conclusory claim to a charging lien—a legal conclusion—is wholly insufficient to state a claim to the Claimed Funds. As set forth above, the Court need not accept G&H's legal conclusions in deciding the instant motion. *See Iqbal*, 129 S. Ct. at 1949. Indeed, the facts alleged by G&H show that the Claimed Funds were received by the law firm prior to the CHS Action, and therefore cannot be proceeds of the CHS Action. Accordingly, accepting the facts pled in the G&H Petition as true, G&H cannot have a charging lien with respect to the Claimed Funds.

G&H's sole allegations with respect to this portion of the Claimed Funds are the conclusory statements that they are proceeds of the CHS Action. Moreover, G&H notes that it performed its legal services with respect to the CHS Action between February 2012 and May 2012. (G&H Petition ¶ 2). The G&H Petition alleges no facts regarding any judgment or settlement obtained in the CHS Action, or any connection between such a judgment or settlement and the Claimed Funds. Instead, G&H admits that the Specific Property, which includes the Claimed Funds, was transferred to G&H on or about June 20, 2011, more than six months before the CHS action was initiated, and G&H's began rendering legal services with respect to that action. *See* G&H Petition ¶ 5. The funds secured by way of judgment or settlement in the CSH Action would, thus, necessarily have come into existence, as a fund to which a charging lien could attach, long after the Claimed Funds had been transferred to G&H. Any charging lien could only have attached to a fund or proceeds generated from the CHS Action in 2012, not from the pre-existing Claimed Funds held in the G&H Trust Account since 2011.

Additionally, G&H does not allege that it has ever petitioned a court to determine and enforce its alleged charging lien.  *See* New York Judiciary Law § 475; *Harley & Browne*, 957 F. Supp. at 49.

For the reasons set forth above, G&H has failed to allege in its pleadings facts sufficient to show that it holds a charging lien against the Claimed Funds under New York Judiciary Law § 475.  Accordingly, G&H does not possess a legal interest in the Claimed Funds that confers standing under 21 U.S.C. § 853(n)(2).

2.  A retaining lien does not confer a legal interest in the Claimed Funds.

G&H also asserts that the Claimed Funds "represent property in which petitioner G&H has a common law retaining lien, for sums due for legal services rendered …[to] CSH Ventures, LLC, from about December 2010 through about February 2012…"  (Petition ¶ 4).  A retaining lien of the type G&H claims does not confer a legal interest in the Claimed Funds on G&H and thus cannot bear the weight of providing G&H standing in this action.

As discussed above, a retaining lien is not in and of itself enforceable and does not grant a legal interest in particular property.  *See In re Haar*, 698 A.2d at 416.  G&H might be entitled, by virtue of the retaining lien, to refuse to turn over the Claimed Funds to its client until paid the amount of its legal fees as determined at a hearing.  Even then, though, G&H would be required to seek to have the court presiding over the underlying matter in order to determine the fee due to the firm, *see Dayan*, 66 N.Y.S.3d at 852, which they do not claim ever to have done.  Ultimately, G&H's claimed retaining lien, even if properly enforced, does not convey any legal interest in the Claimed Funds as against third parties, including the U.S. Government.  G&H cannot rely on the claimed retaining lien in order to assert  standing to contest the forfeiture of the Claimed Funds by the Government under 21 U.S.C. § 853(n)(2).

15

## CONCLUSION

For the reasons set forth above, the Government respectfully submits that its motion to dismiss the G&H Petition should be granted.

Dated: July 13, 2018
         New York, New York

                         Respectfully submitted,

                         GEOFFREY S. BERMAN
                         United States Attorney
                         Southern District of New York

           By:           _____
                         Katherine Reilly
                         Noah Solowiejczyk
                         Assistant United States Attorneys
                         (212) 637-6521/2473