# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRANDON LISI )<br>      Petitioner, )<br>  v. )<br> )<br>UNITED STATES OF AMERICA )<br>      Respondent. ) | CRIMINAL NO. 15-cr-00457-KPF<br><br>December 11, 2019 |

## MOTION FOR COMPASSIONATE RELEASE PURSUANT TO §3582(c)(1)A

NOW COMES THE PETITIONER, Brandon Lisi (hereinafter "Petitioner"), to respectfully request that this Honorable Court grant him compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A), and reduce his sentence to time served so that he may take care of his critically ill mother and attend to his own health needs that have been severely neglected by the BOP, or in the alternative, release him to Home Confinement pursuant to the First Step Act.

## I.     PRELIMINARY STATEMENT

Abraham Lincoln once said, "I have always found that mercy bears richer fruits than strict justice."

With First Step Act of 2018 (FSA), Congress has amended the rules for compassionate release pursuant to §3582(c)(1)(A) so that the Courts have the power to review "extraordinary and compelling" circumstances other than an inmate's terminal illness, and an inmate can seek recourse to the courts after thirty days if the Warden of the prison has not responded to the inmate's letter. Petitioner's letter to the Warden and Unit Team was dated October 16, 2019, and there has been no response.  Therefore, this Court clearly has jurisdiction to adjudicate Petitioner's motion and grant the relief Petitioner seeks.

Having Petitioner on Home Confinement would clearly save the American taxpayers money, which is what the FSA is all about. There is no justifiable reason to keep Petitioner in prison and away from his ill mother, as he was over-sentenced for the crime alleged, and the only other defendants to have done any time in this case received 24 months and 90 days respectively, as opposed to the 38 months that Petitioner received on top of the 78 months from his original sentence from Judge Buchwald for virtually the same conduct. This huge disparity in sentences supports compassionate release in and of itself. *See, e.g., United States v. Diaco*, 448 F.Supp. 978 (D.N.J. Feb. 8, 1978). Petitioner has had a spotless record while incarcerated, and has shown that he is not a danger to society nor is he likely to recidivate, and this Court clearly has the power under §3582(c)(1)(A) to send Petitioner home to take care of his disabled mother and to finally address his own medical problems that the BOP has ignored.

## II.     LEGAL STANDARD

The First Step Act of 2018, which focuses on promoting rehabilitation and combating recidivism, amended 18 U.S.C. §3582(c)(1)(A). Pub. L. No. 226-391, §603, 132 Stat. 5194, 5238-40 (2018). In a section titled "Increasing the Use and Transparency of Compassionate Release," the First Step Act amended §3582(c)(1)(A) to allow courts to modify sentences not only upon motion of the Director of the BOP but also upon "motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." §603(b), 132 Stat. at 5239 (codified at 18 U.S.C. §3582(c)(1)(A) ). A court may now modify a defendant's sentence if it finds on either the BOP's or the defendant's motion that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing

2

Commission." §3582(c)(1)(A). *See, e.g., United States v. Cantu,* 2019 WL 2498923 at *1 (S.D. Tex. June 17, 2019).

### III.    THIS COURT HAS AUTHORITY TO RESENTENCE PETITIONER TO TIME SERVED UNDER SECTION 3582(c)(1)(A) FOR THE EXTRAORDINARY AND COMPELLING REASONS PRESENTED HERE

With the changes made to the compassionate release statute by the FSA, courts need not await a motion from the Director of BOP to resentence prisoners to time served under §3582(c)(1)(A) for "extraordinary and compelling reasons," and the reasons that can justify resentencing need not involve only medical or family circumstances.

### A.    When Congress originally enacted §3582(c)(1)(A) in 1984, it intended for district courts to reduce sentences for prisoners on the basis of extraordinary and compelling reasons not limited to medical or family circumstances

Congress first enacted the modern form of the compassionate release statute contained in §3582(c)(1)(A) as part of the Comprehensive Crime Control Act of 1984. Section 3582(c)(1)(A) states that a district court can modify even a final "term of imprisonment" in four situations, the broadest of which is directly relevant here. A sentencing court can reduce a sentence if and whenever "extraordinary and compelling reasons warrant such a reduction." §3582(c)(1)(A). In 1984, Congress conditioned the reduction of sentences on the BOP Director filing an initial motion in the sentencing court; absent such a motion, sentencing courts had no authority to modify a prisoner's sentence for extraordinary and compelling reasons. *Id.*

While Congress never defined what constitutes an "extraordinary and compelling reason" for resentencing under §3582(c)(1)(A), the legislative history gives an indication of how Congress thought the statute should be employed by federal courts. One of Congress's initial goals in passing the Comprehensive Crime Control Act was to abolish the federal parole system and create a "completely restructured guidelines sentencing system." S. Rep No. 98-225, at 52, 53 n.74 (1983).

Yet, recognizing that parole historically played a key role in responding to changed circumstances, the Senate Committee stressed how some individual cases may still warrant **a second look** at resentencing:

> The Committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances. These would include cases of severe illness, cases in which **other extraordinary and compelling circumstances justify a reduction of an unusually long sentence**, and some cases in which the sentencing guidelines for the offense of which the defender was convicted have been later amended to provide a shorter term of imprisonment. *Id.* at 55-56 (emphasis added).

Rather than having the Parole Commission review every federal sentence focused only on an offender's rehabilitation, Congress decided that §3582(c)(1)(A) could and would enable courts to decide, in individual cases, if "there is a justification for reducing a term of imprisonment." *Id.* at 56. Congress intended for the situations listed in §3582(c)(1)(A) to act as "safety valves for modification of sentences," *id.* at 121, that enabled sentence reductions when justified by various factors that previously could have been addressed through the (now abolished) parole system. This particular safety valve would "assure the availability of specific review and reduction to a term of imprisonment for 'extraordinary and compelling reasons' and [would allow courts] to respond to changes in the guidelines." *Id.* Noting that this approach would keep "the sentencing power in the judiciary where it belongs," rather than with a federal parole board, the statute permitted "later review of sentences in particularly *compelling situations*." *Id.* (emphasis added).  Congress thus intended to give federal sentencing courts an equitable power that would be employed on an individualized basis to correct fundamentally unfair sentences, and there is no indication that Congress limited the safety valve of §3582(c)(1)(A) to medical release; if extraordinary and compelling circumstances were present, they could be used to "justify a reduction of an unusually long sentence." S. Rep No. 98-225, at 55–56.

4

The Sentencing Commission also clarified that the extraordinary and compelling reasons "need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." U.S.S.G. §1B1.13, app. n. 2. In other words, even if an "extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court, [that fact] does not preclude consideration for a [sentence] reduction." *Id.* Consistent with the text and legislative history of §3582(c)(1)(A), the Sentencing Commission concluded that reasons beyond medical, age, and family circumstances could qualify as "extraordinary or compelling reasons" for resentencing, and that the extraordinary or compelling reasons need not be based on changed circumstances occurring after the initial sentencing of the defendant.

### B. Through the First Step Act, Congress changed the process for compassionate release based on criticism of BOP's inadequate use of its authority, returning to the federal judiciary the authority to act on its own to reduce sentences for "extraordinary and compelling reasons."

Prior to Congress passing the First Step Act, the process for compassionate release under § 3582(c)(1)(A) was as follows: the U.S. Sentencing Commission set the criteria for resentencing relief under §3582(c)(1)(A), and the only way a sentencing court could reduce a sentence was if the BOP Director initiated and filed a motion in the sentencing court. See PL 98-473 (HJRes 648), PL 98-473, 98 Stat 1837 (Oct. 12, 1984). If such a motion was filed, the sentencing court could then decide where "the reduction was justified by 'extraordinary and compelling reasons' and was consistent with applicable policy statements issued by the Sentencing Commission." *Id.* So even if a federal prisoner qualified under the Sentencing Commission's definition of extraordinary and compelling reasons, without the BOP Director's filing a motion, the sentencing court had no authority to reduce the sentence, and the prisoner was unable to secure a sentence reduction. This process meant that, practically, the BOP Director both initiated the process and set the criteria for whatever federal prisoner's circumstances the Director decided to move upon.

Leaving the BOP Director with this authority created several problems. The Office of the Inspector General found that the BOP failed: to provide adequate guidance to staff on the criteria for compassionate release, to set time lines for reviewing compassionate release requests, to create formal procedures for informing prisoners about compassionate release, and to generate a system for tracking compassionate release requests. See *FBOP Compassionate Release Program*, at i–iv. As a result of these problems, the OIG concluded that "BOP does not properly manage the compassionate release program, resulting in inmates who may be eligible candidates for release not being considered." *Id.*; see generally Stephen R. Sady & Lynn Deffebach, *Second Look Resentencing Under 18 U.S.C. §3582(c) as an Example of Bureau of Prisons Policies That Result in Overincarceration*, 21 FED. SENT. RPTR. 167 (Feb. 2009). Congress heard those complaints. In late 2018, Congress passed the First Step Act, part of which transformed the process for compassionate release under §3582(c)(1)(A). See P.L. 115-391, 132 Stat. 5194, at §603 (Dec. 21, 2018). Section 603 of the First Step Act changed the process by which §3582(c)(1)(A) compassionate release occurs: instead of depending upon the BOP Director to determine an extraordinary circumstance and then move for release, a court can now resentence "upon motion of the defendant," if the defendant has fully exhausted all administrative remedies, "or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." §3582(c)(1)(A).

Once the defendant has properly exhausted files a motion, a court may, after considering the §3553(a) factors, resentence a defendant if the court finds that extraordinary and compelling reasons warrant a reduction. *Id.* Any reduction of a sentence that a court orders must also be "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* The effect of these new changes is to allow federal judges the ability to move on a prisoner's

compassionate release application even in the face of BOP opposition or its failure to respond to a prisoner's request for compassionate release in a timely manner. Congress made these changes in an effort to expand the use of compassionate release sentence reductions under §3582(c)(1)(A). Congress labeled these changes, "*Increasing* the Use and Transparency of Compassionate Release." 164 Cong. Rec. H10346, H10358 (2018) (emphasis added). Senator Cardin noted in the record that the First Step Act made several reforms to the federal prison system, including that "[t]he bill *expands compassionate release* under the Second Chance Act and expedites compassionate release applications." 164 Cong. R. 199, at S7774 (Dec. 18, 2018) (emphasis added). In the House, Representative Nadler noted that First Step included "a number of very positive changes, such as . . . *improving application of compassionate release*, and providing other measures to improve the welfare of Federal inmates."164 Cong. Rec. H10346-04, 164 Cong. Rec. H10346-04, H10362 (Dec. 20, 2018) (emphasis added).

Federal judges now have the power to order reductions of sentences even in the face of BOP resistance or delay in the processing of applications. The legislative history leading up to the enactment of the First Step Act establishes that Congress intended the judiciary not only to take on the role that BOP once held under the pre-First Step Act compassionate release statute as the essential adjudicator of compassionate release requests, but also to grant sentence reductions on the full array of grounds reasonably encompassed by the "extraordinary and compelling" standard set forth in the applicable statute.

With the First Step Act, Congress decided that federal judges are no longer constrained or controlled by how the BOP Director decides what constitutes extraordinary and compelling reasons for a sentence reduction. Consequently, those sections of the application notes requiring a BOP determination or motion are not binding on courts. *See Stinson v. United States*, 508 U.S. 36,

38 (1993) ("We decide that commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."). Put differently, now that the First Step Act has recast the procedural requirements for a sentence reduction, even if a court finds there exists an extraordinary and compelling reason for a sentence reduction without the BOP Director's initial determination, then the sentence reduction is not inconsistent "with the applicable policy statements issued by the Sentencing Commission." §3582(c)(1)(A).

## IV.   PETITIONER HAS EXTRAORDINARY AND COMPELLING REASONS WHY HIS SENTENCE SHOULD BE REDUCED TO TIME SERVED

Very little guidance exists on what constitutes extraordinary and compelling reasons warranting a sentence reduction under U.S.S.G §1B1.13 cmt. n.1(D). Only the BOP was previously empowered to seek such relief, and it rarely did so. *United States v. Gutierrez*, 2019 WL 1472320, at *1 (D.N.M. Apr. 3, 2019). The statute "does [not] define—or place any limits on—what 'extraordinary and compelling reasons' might warrant such a reduction." *Crowe v. United States*, 430 F. App'x 484, 485 (6th Cir. 2011). Black's Law Dictionary, however, defines "extraordinary" as "[b]eyond what is usual, customary, regular, or common," Extraordinary, (10th ed. 2014), and extrapolating from its definition of "compelling need," a compelling reason is one "so great that irreparable harm or injustice would result if [the relief] is not [granted]," *see* Compelling Need, (10th ed. 2014).  Petitioner has properly exhausted his claim for a reduction of sentence under the compassionate release provision, and he presents this Court with extraordinary and compelling reasons for reducing his sentence to time served.

**A. Petitioner properly exhausted his request for a reduction of sentence under the compassionate release statute**

Under the newly amended §3582(c)(1)(A), Petitioner has standing to bring this motion because more than 30 days elapsed between his reduction-in-sentence request to the warden and a response. The Court may thus:

> "reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that-(i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. §3582(c)(1)(A)." *Cantu* at *3.

Although Congress empowered the Commission to issue policy statements regarding the appropriate use of the sentence-modification provisions under §3582(c)(1)(A), §994(a)(2)(C), Congress may override the Commission's policy statements by statute. *See United States v. Colon*, 707 F.3d 1255, 1261 (11th Cir. 2013) ("Congress can override any guideline or policy statement by statute."); *United States v. Berberena*, 694 F.3d 514, 524-25 (3d Cir. 2012) ("Congress can ... pass a law overruling the Commission's [policy] determination at any time." *United States v. Horn*, 679 F.3d 397, 405-06 (6th Cir. 2012) (*quoting Mistretta v. United States*, 488 U.S. 361, 394 (1989)); *United States v. Anderson*, 686 F.3d 585, 591 (8th Cir. 2012) ("Congress ... can modify or override the Commission's policy statements."); *United States v. Fox*, 631 F.3d 1128, 1131 (9th Cir. 2011). ("Congress of course can override both Guidelines and policy statements by statute."). *See Cantu* at *3.

Petitioner filed a reduction of sentence "compassionate release" request with the Warden on October 16, 2019, and has not received a response now over 30 days later. Therefore, Petitioner may request that this Court reduce his sentence pursuant to §3582(c)(1)(A) (courts can reduce a sentence "upon motion of the defendant," if the defendant has fully exhausted all administrative

remedies). Congress has specifically used §3582 as a congressional act of lenity. *See, e.g., Dillon v. United States*, 560 U.S. 817, 828 (2010) ("§3582(c)(2) represents a congressional act of lenity intended to give prisoners the benefit of later enacted adjustments to the judgments reflected in the Guidelines.").

## B. Petitioner is deserving of having his sentence reduced to time served

This Court must endeavor in the interests of justice not to punish Petitioner because of mistakes he made from 2009 to 2012. That in itself is "extraordinary and compelling". Hopwood, Shon R., *Second Looks & Second Chances* (June 16, 2019). Cardozo Law Review. Available at SSRN: https://ssrn.com/abstract=3404899, describing *United States v. Diaco*, 457 F. Supp. 371 (D.N.J. 1978), where the sentencing judge lowered a sentence from 60 months to time served because other conspirators all received sentences of 3-6 months. *Second Looks & Second Chances* at 115-16, *citing Diaco* at 375. Instead of receiving justice and being sentenced on the basis of the man he was in 2017, Petitioner had a number of false allegations made at his sentencing that were clearly beyond the pale and unconstitutional. This is reversible Plain Error.

The Supreme Court has made two things absolutely clear when it comes to sentencing a defendant. First, "…what the Due Process Clause does require is that a defendant not be sentenced on the basis of "materially untrue" assumptions or "misinformation," and that he have an opportunity to respond to material allegations that he disputes, in order that the court not sentence him in reliance on misinformation." *See Townsend v. Burke,* 334 U.S. 736, 740-41 (1948). *See, also, United States v. Delacruz,* 862 F.3d 163, 175 (2d Cir. 2017). Second, each and every defendant is to be sentenced as he stands now before the court on the day of sentencing. Whatever or whoever the defendant was 10 years ago or even 2 years ago should not be discussed by the court, much less be the basis for sentencing. *See Pepper v. United States*, 562 U.S. 476, 492 (2011),

*quoting United States v. Bryson*, 229 F.3d 425, 426 (2d Cir. 2000) ("a court's duty is always to sentence the defendant as he stands before the court on the day of sentencing.").

Nowhere was there any discussion that Petitioner was the sole individual responsible for taking care of his mother, who is seriously ill and heavily reliant on her son for support. *See United States v. Singh*, 877 F.3d 107, 120 (2d Cir. 2017): "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." Also, as stated in the letter by Joel Sickler, Petitioner has his own medical issues that make his activities of daily living that much harder. Both his mother's, as well as his own health situation has grown dramatically worse since his sentencing, and certainly should be the major factors that lead this Court to reduce Petitioner's sentence to time served.

## V.   THE COURT SHOULD EXERCISE ITS DISCRETION AND RESENTENCE PETITIONER TO TIME SERVED

Compassionate release is appropriate where the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. §3142(g)." *Cantu* at *3. That statute provides:

> **(g) Factors to be considered.** - The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning-
>
> **(1)** the nature and circumstances of the offense charged;
> **(2)** the weight of the evidence against the person;
> **(3)** the history and characteristics of the person. *Cantu* at *6.

Petitioner's offense was not a violent one. In prison, he has had a spotless, incident free, and exemplary record. He has served his time without any violent or aggressive incidents on his BOP file. Petitioner is qualified to serve out the rest of his sentence at a Halfway House or on

Home Confinement. Weighing the applicable §3553(a) factors likewise supports Petitioner's

request for compassionate release. Section 3553(a) provides:

> **(a) Factors to be considered in imposing a sentence.** - The court shall impose a sentence
> sufficient, but not greater than necessary, to comply with the purposes set forth in
> paragraph (2) of this subsection. The court, in determining the particular sentence to be
> imposed, shall consider –
>
> **(1)** the nature and circumstances of the offense and the history and characteristics of the
> defendant;
> **(2)** the need for the sentence imposed—
> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar
> records who have been found guilty of similar conduct; and

In fact Petitioner's case is very similar to the facts in *United States v. Walker*, No. 11-CR-

270, (N.D. Ohio Oct. 24, 2019), where the Judge granted Walker's motion for compassionate

release and a reduction in sentence to time served in order to take care of his mother with AML

who was bed-ridden and without a caregiver, much like Petitioner's mother:

> In addition to his history and his record of incarceration, Mr. Walker cites his desire to aid
> his terminally ill mother, both emotionally and financially, as his main reason for seeking
> immediate release. He has provided undisputed evidence to the Court to show that his
> mother is suffering from Acute Myeloid Leukemia ("AML"). Her prognosis is not good,
> and she requires expensive, non-traditional treatment due to a genetic issue that diminishes
> her response to more traditional treatments. The treatments available to her are generally
> less effective, higher risk, and higher cost than those available to other patients.
>
> Taking into consideration Mr. Walker's history; the circumstances leading up to his crime;
> his acceptance of responsibility not just with regard to the conviction but as demonstrated
> through the meaningful use of his time in prison; the failing health of his mother; his
> extraordinary job opportunity and the good that would allow him to do for his family and
> his community; and, the minimum time left remaining on his sentence; the Court finds that
> Mr. Walker has provided sufficiently extraordinary and compelling reasons to justify an
> alteration of his current sentence under §3582(c)(1)(A)(i), and §1B1.13, Application Note
> 1(D) of the Sentencing Guidelines. The Court, therefore, grants Mr. Walker's request for
> compassionate release and Orders that his sentence be reduced to time served. *Id* at *4-5.

"[T]he Court liberally construes the defendant's requests to be made under the relevant and legally

permitted avenues for post-sentencing relief." *Perez-Asencio*, 2019 WL 626175, at *1 n.2 ; *Curry*,

2019 WL 508067, at *1-2 (explaining that the Court could liberally construe a request for relief

and thus "entertain a request for a modification of a term of imprisonment under [§3582(c)(1)(A)]").

Moreover, Petitioner has severely disabled mother who, after suffering a stroke in 2012, has now been afflicted by an advanced onset of a MS-like disease which has left her paralyzed, causing her to urinate and defecate in bed, with nobody to take care of her. In addition to these issues, Petitioner suffers from a number of disabling ailments that have only been exacerbated by his incarceration in maximum security prisons rather than the camp that he expected. The BOP has hardly provided the medical attention that Petitioner needs and, in fact, the attention it has provided has only served to worsen Petitioner's conditions. Nothing in the record indicates that Petitioner poses any threat to the community, and indeed he does pose zero threat to anyone, let alone the community. Thus, pursuant to §3142(g) and §3553(a), the Court should find that Petitioner's remarkable record of rehabilitation adds to the determination that he presents extraordinary and compelling reasons in support of a sentencing reduction to time served.

## CONCLUSION

For the reasons discussed above, Petitioner prays that this Court would find him worthy of its mercy and grace by granting this Motion for Compassionate Release, or to release him to Home Confinement to properly care for his seriously infirmed mother for the remainder of his sentence.

Respectfully Submitted,

/s/ Brandon Lisi
Brandon Lisi
Incarcerated Inmate
Petitioner, *pro se*
Reg. # 62739-054
MDC Brooklyn
P.O. Box 329002
Brooklyn, NY 11232

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRANDON LISI ) <br>      Petitioner, ) <br>    v. ) <br> ) <br> UNITED STATES OF AMERICA ) <br>      Respondent. ) | CRIMINAL NO. 15-cr-00457-KPF <br><br> December 11, 2019 |

**MOTION FOR COMPASSIONATE RELEASE PURSUANT TO §3582(c)(1)A**

NOW COMES THE PETITIONER, Brandon Lisi (hereinafter "Petitioner"), to respectfully request that this Honorable Court grant him compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A), and reduce his sentence to time served so that he may take care of his critically ill mother and attend to his own health needs that have been severely neglected by the BOP, or in the alternative, release him to Home Confinement pursuant to the First Step Act.

## I.    PRELIMINARY STATEMENT

Abraham Lincoln once said, "I have always found that mercy bears richer fruits than strict justice."

With First Step Act of 2018 (FSA), Congress has amended the rules for compassionate release pursuant to §3582(c)(1)(A) so that the Courts have the power to review "extraordinary and compelling" circumstances other than an inmate's terminal illness, and an inmate can seek recourse to the courts after thirty days if the Warden of the prison has not responded to the inmate's letter. Petitioner's letter to the Warden and Unit Team was dated October 16, 2019, and there has been no response. Therefore, this Court clearly has jurisdiction to adjudicate Petitioner's motion and grant the relief Petitioner seeks.

1

Having Petitioner on Home Confinement would clearly save the American taxpayers money, which is what the FSA is all about. There is no justifiable reason to keep Petitioner in prison and away from his ill mother, as he was over-sentenced for the crime alleged, and the only other defendants to have done any time in this case received 24 months and 90 days respectively, as opposed to the 38 months that Petitioner received on top of the 78 months from his original sentence from Judge Buchwald for virtually the same conduct. This huge disparity in sentences supports compassionate release in and of itself. *See, e.g., United States v. Diaco*, 448 F.Supp. 978 (D.N.J. Feb. 8, 1978). Petitioner has had a spotless record while incarcerated, and has shown that he is not a danger to society nor is he likely to recidivate, and this Court clearly has the power under §3582(c)(1)(A) to send Petitioner home to take care of his disabled mother and to finally address his own medical problems that the BOP has ignored.

## II.    LEGAL STANDARD

The First Step Act of 2018, which focuses on promoting rehabilitation and combating recidivism, amended 18 U.S.C. §3582(c)(1)(A). Pub. L. No. 226-391, §603, 132 Stat. 5194, 5238-40 (2018). In a section titled "Increasing the Use and Transparency of Compassionate Release," the First Step Act amended §3582(c)(1)(A) to allow courts to modify sentences not only upon motion of the Director of the BOP but also upon "motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." §603(b), 132 Stat. at 5239 (codified at 18 U.S.C. §3582(c)(1)(A) ). A court may now modify a defendant's sentence if it finds on either the BOP's or the defendant's motion that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing

Commission." §3582(c)(1)(A). *See, e.g., United States v. Cantu*, 2019 WL 2498923 at *1 (S.D. Tex. June 17, 2019).

### III.   THIS COURT HAS AUTHORITY TO RESENTENCE PETITIONER TO TIME SERVED UNDER SECTION 3582(c)(1)(A) FOR THE EXTRAORDINARY AND COMPELLING REASONS PRESENTED HERE

With the changes made to the compassionate release statute by the FSA, courts need not await a motion from the Director of BOP to resentence prisoners to time served under §3582(c)(1)(A) for "extraordinary and compelling reasons," and the reasons that can justify resentencing need not involve only medical or family circumstances.

### A.   When Congress originally enacted §3582(c)(1)(A) in 1984, it intended for district courts to reduce sentences for prisoners on the basis of extraordinary and compelling reasons not limited to medical or family circumstances

Congress first enacted the modern form of the compassionate release statute contained in §3582(c)(1)(A) as part of the Comprehensive Crime Control Act of 1984. Section 3582(c)(1)(A) states that a district court can modify even a final "term of imprisonment" in four situations, the broadest of which is directly relevant here. A sentencing court can reduce a sentence if and whenever "extraordinary and compelling reasons warrant such a reduction." §3582(c)(1)(A). In 1984, Congress conditioned the reduction of sentences on the BOP Director filing an initial motion in the sentencing court; absent such a motion, sentencing courts had no authority to modify a prisoner's sentence for extraordinary and compelling reasons. *Id.*

While Congress never defined what constitutes an "extraordinary and compelling reason" for resentencing under §3582(c)(1)(A), the legislative history gives an indication of how Congress thought the statute should be employed by federal courts. One of Congress's initial goals in passing the Comprehensive Crime Control Act was to abolish the federal parole system and create a "completely restructured guidelines sentencing system." S. Rep No. 98-225, at 52, 53 n.74 (1983).

3

Yet, recognizing that parole historically played a key role in responding to changed circumstances, the Senate Committee stressed how some individual cases may still warrant **a second look** at resentencing:

> The Committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances. These would include cases of severe illness, cases in which **other extraordinary and compelling circumstances justify a reduction of an unusually long sentence**, and some cases in which the sentencing guidelines for the offense of which the defender was convicted have been later amended to provide a shorter term of imprisonment. *Id.* at 55-56 (emphasis added).

Rather than having the Parole Commission review every federal sentence focused only on an offender's rehabilitation, Congress decided that §3582(c)(1)(A) could and would enable courts to decide, in individual cases, if "there is a justification for reducing a term of imprisonment." *Id.* at 56. Congress intended for the situations listed in §3582(c)(1)(A) to act as "safety valves for modification of sentences," *id.* at 121, that enabled sentence reductions when justified by various factors that previously could have been addressed through the (now abolished) parole system. This particular safety valve would "assure the availability of specific review and reduction to a term of imprisonment for 'extraordinary and compelling reasons' and [would allow courts] to respond to changes in the guidelines." *Id.* Noting that this approach would keep "the sentencing power in the judiciary where it belongs," rather than with a federal parole board, the statute permitted "later review of sentences in particularly *compelling situations.*" *Id.* (emphasis added). Congress thus intended to give federal sentencing courts an equitable power that would be employed on an individualized basis to correct fundamentally unfair sentences, and there is no indication that Congress limited the safety valve of §3582(c)(1)(A) to medical release; if extraordinary and compelling circumstances were present, they could be used to "justify a reduction of an unusually long sentence." S. Rep No. 98-225, at 55–56.

4

The Sentencing Commission also clarified that the extraordinary and compelling reasons "need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." U.S.S.G. §1B1.13, app. n. 2. In other words, even if an "extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court, [that fact] does not preclude consideration for a [sentence] reduction." *Id.* Consistent with the text and legislative history of §3582(c)(1)(A), the Sentencing Commission concluded that reasons beyond medical, age, and family circumstances could qualify as "extraordinary or compelling reasons" for resentencing, and that the extraordinary or compelling reasons need not be based on changed circumstances occurring after the initial sentencing of the defendant.

### B. Through the First Step Act, Congress changed the process for compassionate release based on criticism of BOP's inadequate use of its authority, returning to the federal judiciary the authority to act on its own to reduce sentences for "extraordinary and compelling reasons."

Prior to Congress passing the First Step Act, the process for compassionate release under § 3582(c)(1)(A) was as follows: the U.S. Sentencing Commission set the criteria for resentencing relief under §3582(c)(1)(A), and the only way a sentencing court could reduce a sentence was if the BOP Director initiated and filed a motion in the sentencing court. See PL 98-473 (HJRes 648), PL 98-473, 98 Stat 1837 (Oct. 12, 1984). If such a motion was filed, the sentencing court could then decide where "the reduction was justified by 'extraordinary and compelling reasons' and was consistent with applicable policy statements issued by the Sentencing Commission." *Id.* So even if a federal prisoner qualified under the Sentencing Commission's definition of extraordinary and compelling reasons, without the BOP Director's filing a motion, the sentencing court had no authority to reduce the sentence, and the prisoner was unable to secure a sentence reduction. This process meant that, practically, the BOP Director both initiated the process and set the criteria for whatever federal prisoner's circumstances the Director decided to move upon.

5

Leaving the BOP Director with this authority created several problems. The Office of the Inspector General found that the BOP failed: to provide adequate guidance to staff on the criteria for compassionate release, to set time lines for reviewing compassionate release requests, to create formal procedures for informing prisoners about compassionate release, and to generate a system for tracking compassionate release requests. See *FBOP Compassionate Release Program*, at i–iv. As a result of these problems, the OIG concluded that "BOP does not properly manage the compassionate release program, resulting in inmates who may be eligible candidates for release not being considered." *Id.*; see generally Stephen R. Sady & Lynn Deffebach, *Second Look Resentencing Under 18 U.S.C. §3582(c) as an Example of Bureau of Prisons Policies That Result in Overincarceration*, 21 FED. SENT. RPTR. 167 (Feb. 2009).  Congress heard those complaints. In late 2018, Congress passed the First Step Act, part of which transformed the process for compassionate release under §3582(c)(1)(A). See P.L. 115-391, 132 Stat. 5194, at §603 (Dec. 21, 2018). Section 603 of the First Step Act changed the process by which §3582(c)(1)(A) compassionate release occurs: instead of depending upon the BOP Director to determine an extraordinary circumstance and then move for release, a court can now resentence "upon motion of the defendant," if the defendant has fully exhausted all administrative remedies, "or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." §3582(c)(1)(A).

Once the defendant has properly exhausted files a motion, a court may, after considering the §3553(a) factors, resentence a defendant if the court finds that extraordinary and compelling reasons warrant a reduction. *Id.* Any reduction of a sentence that a court orders must also be "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* The effect of these new changes is to allow federal judges the ability to move on a prisoner's

compassionate release application even in the face of BOP opposition or its failure to respond to a prisoner's request for compassionate release in a timely manner. Congress made these changes in an effort to expand the use of compassionate release sentence reductions under §3582(c)(1)(A). Congress labeled these changes, "*Increasing* the Use and Transparency of Compassionate Release." 164 Cong. Rec. H10346, H10358 (2018) (emphasis added). Senator Cardin noted in the record that the First Step Act made several reforms to the federal prison system, including that "[t]he bill *expands compassionate release* under the Second Chance Act and expedites compassionate release applications." 164 Cong. R. 199, at S7774 (Dec. 18, 2018) (emphasis added). In the House, Representative Nadler noted that First Step included "a number of very positive changes, such as . . . *improving application of compassionate release*, and providing other measures to improve the welfare of Federal inmates."164 Cong. Rec. H10346-04, 164 Cong. Rec. H10346-04, H10362 (Dec. 20, 2018) (emphasis added).

Federal judges now have the power to order reductions of sentences even in the face of BOP resistance or delay in the processing of applications. The legislative history leading up to the enactment of the First Step Act establishes that Congress intended the judiciary not only to take on the role that BOP once held under the pre-First Step Act compassionate release statute as the essential adjudicator of compassionate release requests, but also to grant sentence reductions on the full array of grounds reasonably encompassed by the "extraordinary and compelling" standard set forth in the applicable statute.

With the First Step Act, Congress decided that federal judges are no longer constrained or controlled by how the BOP Director decides what constitutes extraordinary and compelling reasons for a sentence reduction. Consequently, those sections of the application notes requiring a BOP determination or motion are not binding on courts. *See Stinson v. United States*, 508 U.S. 36,

38 (1993) ("We decide that commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."). Put differently, now that the First Step Act has recast the procedural requirements for a sentence reduction, even if a court finds there exists an extraordinary and compelling reason for a sentence reduction without the BOP Director's initial determination, then the sentence reduction is not inconsistent "with the applicable policy statements issued by the Sentencing Commission." §3582(c)(1)(A).

## IV.   PETITIONER HAS EXTRAORDINARY AND COMPELLING REASONS WHY HIS SENTENCE SHOULD BE REDUCED TO TIME SERVED

Very little guidance exists on what constitutes extraordinary and compelling reasons warranting a sentence reduction under U.S.S.G §1B1.13 cmt. n.1(D). Only the BOP was previously empowered to seek such relief, and it rarely did so. *United States v. Gutierrez*, 2019 WL 1472320, at *1 (D.N.M. Apr. 3, 2019). The statute "does [not] define—or place any limits on—what 'extraordinary and compelling reasons' might warrant such a reduction." *Crowe v. United States*, 430 F. App'x 484, 485 (6th Cir. 2011). Black's Law Dictionary, however, defines "extraordinary" as "[b]eyond what is usual, customary, regular, or common," Extraordinary, (10th ed. 2014), and extrapolating from its definition of "compelling need," a compelling reason is one "so great that irreparable harm or injustice would result if [the relief] is not [granted]," *see* Compelling Need, (10th ed. 2014). Petitioner has properly exhausted his claim for a reduction of sentence under the compassionate release provision, and he presents this Court with extraordinary and compelling reasons for reducing his sentence to time served.

## A. Petitioner properly exhausted his request for a reduction of sentence under the compassionate release statute

Under the newly amended §3582(c)(1)(A), Petitioner has standing to bring this motion because more than 30 days elapsed between his reduction-in-sentence request to the warden and a response. The Court may thus:

> "reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that-(i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. §3582(c)(1)(A)." *Cantu* at *3.

Although Congress empowered the Commission to issue policy statements regarding the appropriate use of the sentence-modification provisions under §3582(c)(1)(A), §994(a)(2)(C), Congress may override the Commission's policy statements by statute. *See United States v. Colon*, 707 F.3d 1255, 1261 (11th Cir. 2013) ("Congress can override any guideline or policy statement by statute."); *United States v. Berberena*, 694 F.3d 514, 524-25 (3d Cir. 2012) ("Congress can ... pass a law overruling the Commission's [policy] determination at any time." *United States v. Horn*, 679 F.3d 397, 405-06 (6th Cir. 2012) (*quoting Mistretta v. United States*, 488 U.S. 361, 394 (1989)); *United States v. Anderson*, 686 F.3d 585, 591 (8th Cir. 2012) ("Congress ... can modify or override the Commission's policy statements."); *United States v. Fox*, 631 F.3d 1128, 1131 (9th Cir. 2011). ("Congress of course can override both Guidelines and policy statements by statute."). *See Cantu* at *3.

Petitioner filed a reduction of sentence "compassionate release" request with the Warden on October 16, 2019, and has not received a response now over 30 days later. Therefore, Petitioner may request that this Court reduce his sentence pursuant to §3582(c)(1)(A) (courts can reduce a sentence "upon motion of the defendant," if the defendant has fully exhausted all administrative

9

remedies). Congress has specifically used §3582 as a congressional act of lenity. *See, e.g., Dillon v. United States*, 560 U.S. 817, 828 (2010) ("§3582(c)(2) represents a congressional act of lenity intended to give prisoners the benefit of later enacted adjustments to the judgments reflected in the Guidelines.").

**B. Petitioner is deserving of having his sentence reduced to time served**

This Court must endeavor in the interests of justice not to punish Petitioner because of mistakes he made from 2009 to 2012. That in itself is "extraordinary and compelling". Hopwood, Shon R., *Second Looks & Second Chances* (June 16, 2019). Cardozo Law Review. Available at SSRN: https://ssrn.com/abstract=3404899, describing *United States v. Diaco*, 457 F. Supp. 371 (D.N.J. 1978), where the sentencing judge lowered a sentence from 60 months to time served because other conspirators all received sentences of 3-6 months. *Second Looks & Second Chances* at 115-16, *citing Diaco* at 375. Instead of receiving justice and being sentenced on the basis of the man he was in 2017, Petitioner had a number of false allegations made at his sentencing that were clearly beyond the pale and unconstitutional. This is reversible Plain Error.

The Supreme Court has made two things absolutely clear when it comes to sentencing a defendant. First, "…what the Due Process Clause does require is that a defendant not be sentenced on the basis of "materially untrue" assumptions or "misinformation," and that he have an opportunity to respond to material allegations that he disputes, in order that the court not sentence him in reliance on misinformation." *See Townsend v. Burke,* 334 U.S. 736, 740-41 (1948). *See, also, United States v. Delacruz*, 862 F.3d 163, 175 (2d Cir. 2017). Second, each and every defendant is to be sentenced as he stands now before the court on the day of sentencing. Whatever or whoever the defendant was 10 years ago or even 2 years ago should not be discussed by the court, much less be the basis for sentencing. *See Pepper v. United States*, 562 U.S. 476, 492 (2011),

*quoting United States v. Bryson,* 229 F.3d 425, 426 (2d Cir. 2000) ("a court's duty is always to sentence the defendant as he stands before the court on the day of sentencing.").

Nowhere was there any discussion that Petitioner was the sole individual responsible for taking care of his mother, who is seriously ill and heavily reliant on her son for support. *See United States v. Singh,* 877 F.3d 107, 120 (2d Cir. 2017): "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." Also, as stated in the letter by Joel Sickler, Petitioner has his own medical issues that make his activities of daily living that much harder. Both his mother's, as well as his own health situation has grown dramatically worse since his sentencing, and certainly should be the major factors that lead this Court to reduce Petitioner's sentence to time served.

## V.   THE COURT SHOULD EXERCISE ITS DISCRETION AND RESENTENCE PETITIONER TO TIME SERVED

Compassionate release is appropriate where the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. §3142(g)." *Cantu* at \*3. That statute provides:

> **(g) Factors to be considered.** - The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning-
>
> **(1)** the nature and circumstances of the offense charged;
> **(2)** the weight of the evidence against the person;
> **(3)** the history and characteristics of the person. *Cantu* at \*6.

Petitioner's offense was not a violent one. In prison, he has had a spotless, incident free, and exemplary record. He has served his time without any violent or aggressive incidents on his BOP file. Petitioner is qualified to serve out the rest of his sentence at a Halfway House or on

Home Confinement. Weighing the applicable §3553(a) factors likewise supports Petitioner's request for compassionate release. Section 3553(a) provides:

> **(a) Factors to be considered in imposing a sentence.** - The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
>
> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
> **(2)** the need for the sentence imposed—
> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

In fact Petitioner's case is very similar to the facts in *United States v. Walker*, No. 11-CR-270, (N.D. Ohio Oct. 24, 2019), where the Judge granted Walker's motion for compassionate release and a reduction in sentence to time served in order to take care of his mother with AML who was bed-ridden and without a caregiver, much like Petitioner's mother:

> In addition to his history and his record of incarceration, Mr. Walker cites his desire to aid his terminally ill mother, both emotionally and financially, as his main reason for seeking immediate release. He has provided undisputed evidence to the Court to show that his mother is suffering from Acute Myeloid Leukemia ("AML"). Her prognosis is not good, and she requires expensive, non-traditional treatment due to a genetic issue that diminishes her response to more traditional treatments. The treatments available to her are generally less effective, higher risk, and higher cost than those available to other patients.
>
> Taking into consideration Mr. Walker's history; the circumstances leading up to his crime; his acceptance of responsibility not just with regard to the conviction but as demonstrated through the meaningful use of his time in prison; the failing health of his mother; his extraordinary job opportunity and the good that would allow him to do for his family and his community; and, the minimum time left remaining on his sentence; the Court finds that Mr. Walker has provided sufficiently extraordinary and compelling reasons to justify an alteration of his current sentence under §3582(c)(1)(A)(i), and §1B1.13, Application Note 1(D) of the Sentencing Guidelines. The Court, therefore, grants Mr. Walker's request for compassionate release and Orders that his sentence be reduced to time served. *Id* at *4-5.

"[T]he Court liberally construes the defendant's requests to be made under the relevant and legally permitted avenues for post-sentencing relief." *Perez-Asencio*, 2019 WL 626175, at *1 n.2 ; *Curry*, 2019 WL 508067, at *1-2 (explaining that the Court could liberally construe a request for relief

and thus "entertain a request for a modification of a term of imprisonment under [§3582(c)(1)(A)]").

Moreover, Petitioner has severely disabled mother who, after suffering a stroke in 2012, has now been afflicted by an advanced onset of a MS-like disease which has left her paralyzed, causing her to urinate and defecate in bed, with nobody to take care of her. In addition to these issues, Petitioner suffers from a number of disabling ailments that have only been exacerbated by his incarceration in maximum security prisons rather than the camp that he expected. The BOP has hardly provided the medical attention that Petitioner needs and, in fact, the attention it has provided has only served to worsen Petitioner's conditions. Nothing in the record indicates that Petitioner poses any threat to the community, and indeed he does pose zero threat to anyone, let alone the community. Thus, pursuant to §3142(g) and §3553(a), the Court should find that Petitioner's remarkable record of rehabilitation adds to the determination that he presents extraordinary and compelling reasons in support of a sentencing reduction to time served.

## CONCLUSION

For the reasons discussed above, Petitioner prays that this Court would find him worthy of its mercy and grace by granting this Motion for Compassionate Release, or to release him to Home Confinement to properly care for his seriously infirmed mother for the remainder of his sentence.


Respectfully Submitted,

/s/ Brandon Lisi
Brandon Lisi
Incarcerated Inmate
Petitioner, *pro se*
Reg. # 62739-054
MDC Brooklyn
P.O. Box 329002
Brooklyn, NY 11232







RECEIVED
DEC 17 2019
CLERKS OFFICE
S.D.N.Y.



USMP3
S.D.N.Y.

Criminal