**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, NY 10007*

February 18, 2020

**BY ECF**

The Honorable Katherine Polk Failla
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

      **Re:**    ***United States v. Lisi*, 15 Cr. 457 (KPF)**

Dear Judge Failla:

      The Government writes in response to the motion (the "Motion") of Brandon Lisi, the defendant in the above-captioned case, for compassionate release pursuant to 18 U.S.C. § 3582(c) and the First Step Act. Lisi has requested that the Court modify his sentence to time served so that he can care for his ill mother. In the alternative, he seeks release to home confinement. For the reasons described below, Lisi's request should be denied.

      The extensive course of fraud and dishonesty that Brandon Lisi engaged in over a period of years while acting as an attorney weighs heavily against granting his request for the extraordinary release of compassionate release. Lisi's conduct wreaked havoc in the lives of his victims – victims who will never recover fully from the misfortune they suffered at Lisi's hands. That Lisi engaged in these frauds while acting as an attorney whose clients put their trust in him makes his conduct all the more egregious. Brandon Lisi ripped off multiple victims – including a widow and a pair of young parents – while he was already facing two separate Indictments in this District. Simply put, it is hard to imagine a less appropriate candidate for the extraordinary relief of compassionate release.

      The Government is not unsympathetic to the illness of Lisi's mother (although as is discussed below, Lisi has provided no medical records to corroborate his account of his mother's current medical condition). But the illness of a parent – even a terminal illness – is simply not grounds for the extraordinary relief of compassionate release. The statute does not contemplate compassionate release under these circumstances, and multiple courts have rejected compassionate release in similar circumstances. This is especially so given that Lisi has a sister who could assist in the care of his mother and that there is a home health aide working at Lisi's mother's home.

      For these reasons, and as set forth in greater detail below, Lisi's Motion should be denied.

## I.    Background

### A. The Prior Proceedings

Lisi has been indicted and convicted multiple times in this District, and was on pretrial release for his initial indictments at the time he committed the offenses in the case before Your Honor.  On October 5, 2009, Lisi and others were indicted in this District for conspiring to commit wire fraud and bank fraud in *United States v. LaRochelle, et al.*, 09 Cr. 948 (NRB), Dkt. No. 1. (the "First SDNY Indictment").  The First SDNY Indictment alleged that from in or about 2005 through at least in or about 2007, Lisi and his co-conspirators "engaged in an illegal scheme to defraud various lending institutions . . . in order to induce the lenders to make loans for the purchase of residential properties in New York City and Long Island that the lenders otherwise would not have funded." (*Id.*).  Lisi was alleged to have "prepared sale contracts for the purchase of target properties and procured straw buyers to act as purchasers for target properties." (*Id.* at 10).

In December 2009, Lisi and other co-conspirators were indicted in this District for conspiring to commit bank and wire fraud, as well as the substantive offenses of wire and bank fraud, in connection with a mortgage fraud scheme. *See United States v. Dente, et al.*, 09 Cr. 1188 (LTS), Dkt. No. 24 (the "Second SDNY Indictment"). The Second SDNY Indictment alleged, *inter alia*, that Lisi had held himself out as an attorney when in fact he was not yet admitted to practice law in the State of New York. (*Id.* at ¶ 2).  The Second SDNY Indictment further alleged that while working at the offices of Dustin Dente from at least in or about 2006 through in or about March 2009, Lisi, Dente and others fraudulently "obtained numerous home mortgage loans with respect to at least fourteen properties under false and fraudulent pretenses, with a total face value of over $7.4 million, many of which are now in default and/or foreclosure proceedings," and that, with respect to several of the mortgages, the defendants had "misappropriated all or part of the loan proceeds for their own use and enrichment." (*Id.* at ¶ 7).  The Second SDNY Indictment mentioned a property located at 135 Woodhill Lane, Manhasset, New York (the "Woodhill Property"), and specifically alleged that Dente and Lisi had arranged for a straw buyer to purchase the Woodhill Property, obtained a mortgage in the straw buyer's name, obtained a refinanced loan on the property without the straw buyer's knowledge, never satisfied the underlying mortgage with the proceeds of the refinancing and instead misappropriated approximately $1.28 million obtained from the refinancing for their own enrichment. (*Id.* at ¶ 18(a)).

In 2009, Lisi was arrested and separately charged by the Office of the District Attorney for Suffolk County in connection with three fraudulent real estate and mortgage loan transactions in 2007 and 2008 involving commercial property located at 53-55 Main Street, Cold Spring Harbor, New York (the "Cold Spring Harbor Property"), and residential property located at 6 Union Street, Sag Harbor, New York (the "Sag Harbor Property") and 33 Stuyvesant Street, Huntington, New York. (the "Suffolk County Indictment").  The loan proceeds involved in these three fraudulent transactions totaled approximately $2.3 million.

Lisi purchased the Cold Spring Harbor property through an LLC he controlled, Clear Blue Water, LLC.  In order to get a mortgage loan for the Cold Spring Harbor Property after Clear Blue Water had purchased it, Lisi and his co-conspirators submitted fraudulent documents to Washington Mutual Bank, including documents concealing Clear Blue Water's September 2007

purchase, falsified leases, and falsified contract documents. Lisi operated a restaurant at this location for a period of time; the restaurant eventually went out of business.

The Suffolk County Indictment alleged that, with respect to the "Cold Spring Harbor Property, Lisi and his co-defendants had committed grand larceny in the first degree as a result of stealing "certain property, namely U.S. currency from Washington Mutual Bank FA, the value of which exceeded more than . . . $1,000,000 . . . related to [the Cold Spring Harbor Property]" and as a result of stealing "certain property, namely U.S. currency from Sam Glass, Esq. and Investors, the value of which exceeded more than . . . $1,000,000 . . . related to [the Cold Spring Harbor Property]." One of the mortgage loans at-issue in the Suffolk County Indictment was a second mortgage that related to the Sag Harbor Property, the Cold Spring Harbor Property, and the Woodhill Property.

In connection with the Suffolk County Indictment, Lisi pled guilty on or about July 29, 2011 to two counts of grand larceny in the first degree and one count of grand larceny in the second degree. Lisi was sentenced to one to three years' imprisonment per count.

On April 19, 2013, Lisi pled guilty before Judge Buchwald to Count One of the First SDNY Indictment and to Count One of the Second SDNY Indictment, both of which charged conspiracy to commit bank fraud and wire fraud. Lisi allocuted that he participated in schemes to defraud lenders, including federally-insured lenders, in connection with residential mortgage loans; that he and others used straw buyers in furtherance of these schemes; that false and fraudulent documents were submitted to the lenders; that the lenders were deceived into believing that the straw buyers would occupy the houses being purchased with mortgage loans; and that some lenders were deceived into believing that mortgage funds would be used to pay off an existing loan on the properties, when in fact those mortgage funds were misappropriated by the co-conspirators. Lisi further acknowledged that he personally profited from the schemes.

Lisi later sought to vacate his guilty plea and argued that the plea was not entered knowingly and voluntarily. Judge Buchwald later denied this motion. (09 Cr. 1188, Dkt. No. 178). Lisi was subsequently sentenced before Judge Buchwald on the First and Second SDNY Indictments to 78 months' imprisonment, which represented the low-end of the Guidelines range. When imposing sentence, Judge Buchwald stated in pertinent part:

> Mr. Lisi, in your sentencing letter of May 15th, you state that you are ashamed of what you have done. You should be. You should be ashamed that even to this day that you have never stopped blaming the fates of who you encountered on your life's journey for the myriad of crimes that you committed, even going so far as to blame Judge Swain for entertaining an argument when she was a bankruptcy judge. Your letter is just filled with so many examples of self-pity. To this day, you seem incapable of understanding that it is fraud to borrow money from a bank based on false statements of who the borrower is. For someone with a law degree, who passed the bar, it is truly difficult to fathom how you could not understand such a simple concept . . . .

3

* * * *

You should be ashamed that in your desperation to avoid this day, that you were so casual in impugning the reputation of your prior counsel, even though to this very day this Court has no idea of what illegality or ethical breach your prior counsel reportedly engaged in. You should be ashamed of your shameless reliance on your mother's health condition when at the same time you dragged her into court for no reason other than an obvious ploy to appeal to the Court's sympathy.

* * **

In your sentencing letter, you also assert that these crimes were committed when you were extremely immature, albeit in your thirties, and that now you are a grown man who has to face the consequences of your actions, as you are responsible for what you have done. Based on the record of your behavior during this case and the actions that you have authorized your lawyers to take on your behalf, I don't believe that you have truly accepted responsibility for your numerous crimes despite your having pled to three indictments. While I have decided not to deduct your acceptance points to avoid an unnecessary appellate issue, I believe that under the circumstances of this case, I would be totally justified in doing so.

Despite your professed acceptance of responsibility, the fact is that there is a documented history of repeated efforts to delay the trial and the date of sentencing, which included reliance on medical conditions that were described as urgent or severe or were clearly exaggerated and remain unattended to. We have recited some of the details in our opinion of May 16, 2014. For present purposes, it suffices to say that you did not plead guilty until April 19th, 2013, after being initially indicted on October 5th, 2009, and that today's sentencing is on the seventh adjourned date.

* * * *

And despite your professed acceptance of responsibility, even here today, your recent motion to withdraw your guilty plea, a motion that didn't even begin to meet the well-established standards for such a motion, is simply not the action of a person who has in a fundamental, moral way truly recognized the wrongfulness of his conduct and is now ready to live a law-abiding life.

Mr. Lisi, in my 34 years on the federal bench, I have never had a defendant endeavor to manipulate this Court as you have. Mr. Lisi, for your sake, I hope that you come to truly recognize that you have deep character flaws that led you to commit these crimes and others. I don't think you have truly

gained that insight; and if you do not, you will be tempted to place yourself
on the wrong side of the ethical and legal line once again.

(09 Cr. 948 (NRB), Dkt. No. 311, at 26-30).

Despite having pleaded guilty pursuant to a plea agreement with the Government that
contained an appellate waiver, Lisi filed an appeal.  He argued in relevant part that the district
court erred by denying his motion to withdraw his guilty plea, which was premised on a purported
conflict of interest of his counsel at the time of the plea and an alleged oral promise by the
Government to discuss future charging decisions with his counsel.  *See United States v. Lisi*, 706
F. App'x 48 (2d Cir. 2017).  The Second Circuit affirmed the District Court's denial of Lisi's
motion to withdraw his plea, holding that "Lisi failed to raise a significant question as to the
'voluntary and intelligent nature of [his] decision to plead guilty.'" *Id.* at 48 (quoting *United States
v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2015)).

### B. Lisi's Offense Conduct

At all times relevant to the instant charges, Lisi worked at the offices of Katerina
Arvanitakis, who was an attorney licensed to practice in New York. (PSR ¶¶ 13-14).  From at least
in or about 2010 through in or about 2014[1]—starting after the prior SDNY Indictments were
returned and continuing past Lisi's guilty pleas in those cases—Lisi and Arvanitakis worked
together to defraud various clients by soliciting funds from these clients based on fraudulent
misrepresentations about how the solicited funds were going to be used. (PSR ¶ 14). Lisi induced
one of the clients to make material misrepresentations in connection with bankruptcy proceedings
concerning a real estate company in an effort to maintain control of, or regain control of, a property
owned or controlled by the real estate company. (*Id.*).

Among the individuals defrauded by Lisi and Arvanitakis was a widow ("Victim-1") with
two children who had recently received approximately $500,000 in connection with the death of
her spouse. (PSR ¶ 15). In or about August 2010, Victim-1 retained Arvanitakis as legal counsel
in connection with, among other matters, a potential wrongful death claim relating to Victim-1's
late husband and a pending foreclosure action regarding Victim-1's residence. Victim-1 paid
Arvanitakis a $6,500 retainer. (*Id.*). In approximately April 2011, Lisi and Arvanitakis met with
Victim-1 at Victim-1's home and advised her that they could assist her by investing the
approximately $500,000 Victim-1 had received in insurance proceeds. (PSR ¶ 16). Victim- 1
agreed and transferred the $500,000 to a bank account controlled by Arvanitakis. Lisi and
Arvanitakis represented that the funds would be used for certain purported investment
opportunities, including in particular real estate properties.

Between approximately 2011 and 2012, substantial portions of Victim-1's funds were
diverted for purposes other than the promised investment opportunities. (PSR ¶ 16). Between
approximately May 2011 and June 2011, however, Lisi and Arvanitakis visited Victim- 1's home
on multiple occasions and advised her about the purported investment opportunities. (PSR ¶ 17).
For example, in May 2011, Lisi and Arvanitakis induced Victim-1 to release an additional

---

[1] Lisi was disbarred in the State of New York in or about July 2011. (PSR ¶ 13).

$150,000 from the funds previously transferred to Arvanitakis, purportedly as an investment in the Cold Spring Harbor Property. (PSR ¶ 18). Lisi and Arvanitakis told Victim-1 that Victim-1 was purchasing a second mortgage on the Cold Spring Harbor Property, which would eventually permit Victim-1 and potential co-investors to purchase the Cold Spring Harbor Property and to collect rent from its tenants. Lisi and Arvanitakis did not disclose that the Cold Spring Harbor Property was one of several real estate properties that were the subject of the Suffolk County Indictment filed against Lisi and others. (*Id.*). Victim-1 never received any payments in connection with the "investment" in the Cold Spring Harbor Property. (*Id.*). Furthermore, certain portions of the $150,000 Victim-1 agreed to release in connection with the Cold Spring Harbor Property were diverted by Lisi and Arvanitakis for the payment of personal expenses and as cash withdrawals. Using similar misrepresentations, Lisi and Arvanitakis also fraudulently induced Victim-1 to release an additional $100,000, purportedly as an investment in the Sag Harbor Property. (PSR ¶ 20).

In the course of inducing Victim-1 to "invest" the funds described above, Lisi and Arvanitakis created a real estate company ("Company-1") designed to pool the funds provided by Victim-1 with funds provided by other victims of their scheme. (PSR ¶ 21). On July 25, 2012, a Chapter 11 bankruptcy petition was filed with respect to Company-1 in the United States Bankruptcy Court for the Eastern District of New York. Company-1 claimed to own the Cold Spring Harbor Property. On August 14, 2012, Victim-1, acting at the direction of Lisi, appeared before the United States Bankruptcy Court for the Eastern District of New York and asserted falsely, among other things, that Company-1 purchased the Cold Spring Harbor Property from a co-conspirator of Lisi and Arvanitakis and that Victim-1 had only heard of Lisi but that he was not involved in Company-1's purchase of the Cold Spring Harbor Property. (*Id.*). Over the course of 2012, Victim-1 became concerned about the status of her purported investments —none of which had produced any returns—and began asking Lisi and Arvanitakis to return her money, which Victim-1 required to pay living expenses. (PSR ¶ 22). On occasion, for example, Victim-1 sought the return of money to pay for gifts or school clothing for Victim-1's children or to pay for holiday expenses. (*Id.*). Lisi and Arvanitakis repeatedly told Victim-1, among other things, that the money was tied up in investments and that Victim-1 could not be trusted to manage the money herself. (*Id.*). Over the course of 2012, Lisi and Arvanitakis returned only approximately $4,400 to Victim-1. (PSR ¶ 22).

Lisi and Arvanitakis also defrauded a husband and wife ("Victim-2" and "Victim-3", respectively) out of approximately $850,000. (PSR ¶¶ 23, 32).  Finally, among individuals defrauded by Lisi and Arvanitakis was an individual ("Victim-4") who received several hundred thousands dollars in an inheritance. (PSR ¶ 27).  Lisi and Arvanitakis induced Victim-4 to retain Arvanitakis as legal counsel and then made misrepresentations concerning purported real estate transactions in order to obtain and retain over $100,000 from Victim-4.  (PSR ¶ 27).

Lisi and Arvanitakis used the funds they fraudulently obtained from their victims to, among other things, repay debts, replenish bank accounts, personal expenditures, transfers to relatives and substantial cash withdrawals.  (PSR ¶ 28).  In total, as a result of their participation in the above-described scheme, Lisi and Arvanitakis caused Victims-1, 2, 3, and 4 losses totaling approximately $1.5 million. (PSR ¶ 32).

C. *Lisi's Sentencing Before This Court*

Indictment 15 Cr. 457 (KPF) was filed on July 20, 2015, charging Lisi and Arvanitakis in three counts. On April 3, 2017, Lisi pled guilty to Count One (conspiracy to commit wire fraud), pursuant to a plea agreement with the Government. In the plea agreement, the parties stipulated that the applicable Guidelines range was 51 to 63 months' imprisonment (the "Stipulated Guidelines Range"). Lisi's plea agreement also contained an appellate waiver, including that he would not file a direct appeal of any sentence within or below the Stipulated Guidelines Range, regardless of whether the term of imprisonment was imposed to run consecutively or concurrently with Lisi's prior sentence.

On September 19, 2017, Lisi appeared before this Court for sentencing. Prior to sentencing, his counsel filed a detailed sentencing submission that Your Honor noted was "the most comprehensive sentencing submission I have ever received." (15 Cr. 457 (KPF), Dkt. No. 126, at 3). While Lisi had sought to argue that he should receive a sentencing benefit due to purported claims that his trial counsel was ineffective in the proceedings before Judge Buchwald, this Court rejected that contention. This Court found that that there was "something strange" in claiming that counsel in another case was ineffective, but rather than seeking to withdraw Lisi's plea in that case, asking instead for a sentencing benefit in a different case. (*Id.* at 42). To the contrary, this Court observed that the appropriate course would be to seek relief in the case where the purported ineffectiveness occurred, which Lisi had done with respect to a related, rejected claim of ineffectiveness before Judge Buchwald. (*Id.* at 43). Furthermore, this Court rejected the argument that, but for prior trial counsel's purported ineffectiveness, the instant conduct would have been folded into the prior cases without affecting the Guidelines or Lisi's sentence. This Court noted that the conduct in the case before her was not considered by Judge Buchwald, but if it had, it likely would have resulted in a higher Guidelines calculation as a result of obstruction enhancements and a lack of acceptance-of-responsibility credit. (*Id.* at 43-44).

Lisi thereafter directly addressed Your Honor, offering a lengthy statement about his remorse and rehabilitation, as well as the harsh conditions of his confinement and his medical conditions. (*Id.* at 83-95). Lisi also pledged to ensure that Victim-1 was paid back in full for her losses. (*Id.* at 92).

This Court imposed a sentence of 38 months' imprisonment (which was well below the low-end of the Guidelines range of 51 to 61 months' imprisonment), to run consecutively to the sentence of 78 months' imprisonment imposed by Judge Buchwald. This Court provided a detailed explanation of the 3553(a) factors that led it to impose this sentence, which included counterbalancing Lisi's exemplary record in prison and his care for his mother against the offense conduct, which was, in this Court's view, "egregious to a level I really—I really didn't think was possible." (*Id.* at 103). This Court noted that what made Lisi's offense conduct particularly devastating was "not the number of people, but just the manner and the circumstances of those who were victimized," and in particular the fact that a "widow was victimized of the settlement proceeds from her husband's insurance policy." (*Id.*). This Court also discussed the seriousness of the offense and the harm inflicted on the victims, focusing in particular on the fact that "for a substantial period of the time of the fraud [Lisi] was an attorney, offered his services as an attorney, and offered them his trust and his insight and his knowledge and used it to try" to remedy a prior

7

fraud or generate funds for himself. (*Id.* at 104). Thus, "the seriousness of the offense and, as noted, the respect for the court, [counseled] in favor [of] a serious sentence." (*Id.*). In imposing the below-Guidelines sentence of 38 months, this Court indicated that it had taken into account her "concerns about Mr. Lisi's mother and [her] concerns about the medical care [Lisi] is receiving while in custody." (*Id.* at 105). This Court further noted that it had thought about giving Lisi a Guidelines sentence in light of the enormous harms he had caused his victims, but that, in sum, the Court's job was to "balance the concern of the community and the safety of the community and the need to protect the community with the progress and the good things that have been done by the defendant and the hope that he reenters society and is, again, a productive citizen." (*Id.* at 105).

### D. Lisi's Pending Appeal

Despite the appellate waiver in his plea agreement and his purported acceptance of responsibility for what he did, Lisi yet again filed an appeal. Lisi principally argued that the sentence this Court imposed was procedurally unreasonable because Your Honor did not mention parsimony during her analysis of the sentencing factors" and that rather "she mentioned it only *after* she had announced the sentence, simply quoting the statutory language." According to Lisi, this means that "[p]arsimony did not appear to factor into, let alone guide, [this Court's] analysis." Lisi also contended that his defense counsel at sentencing was ineffective because he acknowledged that any claim that Lisi's trial counsel in his prior case was ineffective should be raised in a Section 2255 petition in that prior case. In a *pro se* brief Lisi also argued that (i) this Court erred by not "fashioning a sentence that remedies the prejudice suffered by Lisi as a result of [prior trial counsel's] and Lisi's other attorneys' ineffective assistance of counsel, which caused Lisi to lose the benefit of the April 16, 2013 plea offer"; (ii) this Court erred by not imposing a concurrent sentence that did not exceed the 78-month term of imprisonment he was already serving because his conduct in this case constitutes relevant conduct under the Sentencing Guidelines for his prior case; (iii) this Court erred by not crediting Lisi for the 36 months he served for the Suffolk County state prosecution; and (iv) this Court erred by not properly considering the Section 3553 factors and sentencing Lisi to an unreasonable sentence.

Lisi's appeal remains pending.

## II.    Lisi's Motion for Compassionate Release

Lisi began serving the sentence of 78 months' imprisonment imposed by Judge Buchwald in or about June 2014. According to the Bureau of Prisons website, his scheduled release date is September 12, 2022. On or about October 16, 2019, Lisi made a motion to the Warden of the Metropolitan Detention Center ("MDC") where he is housed, pursuant to 18 U.S.C. § 3582, to request a reduction his sentence to time served. Lisi's application remains under review.[2] On

---

[2] Lisi submitted his request by email to the inbox for his unit manager at MDC. Due to staffing changes at the facility, the staff at MDC did not initially notice Lisi's request. After the Government inquired with MDC's legal counsel regarding the status of Lisi's request, the request was located in the unit manager's inbox and the Government is informed it has now been forwarded to the Warden for review. For the purposes of his motion the Government will treat Lisi's motion as procedurally proper as more than 30 days has passed since he initially submitted his request to the MDC for review. *See* 18 U.S.C. § 3582(c)(1)(A) ("The court may not modify a

December 17, 2019, Lisi filed the Motion.  Lisi seeks that this Court "grant him compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), and reduce his sentence to time served so that he may take care of his critically ill mother and attend to his own health needs that have been severely neglected by the BOP." (Lisi Mem. at 1).  In the alternative, Lisi seeks that this Court "release him to Home Confinement pursuant to the First Step Act." (*Id.*).

### III.   Applicable Law

Under 18 U.S.C. § 3582(c)(1)(A), the Court "may not modify a term of imprisonment once it has been imposed except" as provided by the statute.  As relevant here:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

*Id.*

The relevant Sentencing Commission policy statement is found in U.S.S.G. § 1B1.13.  That section provides that the Court may reduce the term of imprisonment if "extraordinary and compelling reasons warrant the reduction," *id.* § 1B1.13(1)(A); "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," *id.* § 1B1.13(2); and "the reduction is consistent with this policy statement," *id.* § 1B1.13(3).

The Application Notes describe the circumstances under which "extraordinary and compelling reasons exist."  *Id.* § 1B1.13 Application Note 1.  Based on Lisi's Motion, only one circumstance is relevant here:

> (C) Family circumstances. -
>
> . . .
>
> > (i)      The death or incapacitation of the caregiver of the defendant's minor child or minor children.

---

term of imprisonment once it has been imposed except that . . . the court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf *or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility*, *whichever is earlier*, may reduce the term of imprisonment. . . .").

> (ii)  The incapacitation of the defendant's spouse or registered partner
> when the defendant would be the only available caregiver for the
> spouse or registered partner.

*Id.* § 1B1.13 Application Note 1(C).

Regardless of the theory of "extraordinary and compelling reason" that a defendant
proceeds under, the 18 U.S.C. § 3553(a) factors are relevant to whether compassionate release is
warranted.  *See* 18 U.S.C. § 3582; U.S.S.G. § 1B1.13.

As the proponent of the motion, Lisi bears the burden of proving that "extraordinary and
compelling reasons" exist.  *See, e.g., United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)
("A party with an affirmative goal and presumptive access to proof on a given issue normally has
the burden of prove as to that issue."); *cf. United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir.
2013).[3]

## IV.   Analysis

### A.   *Lisi's Serious Offense Conduct and Failure to Accept Responsibility Warrant Denial of the Motion*

The section 3553(a) factors remain relevant in determining whether to grant a defendant's
motion for compassionate release.  Those factors weigh heavily against Lisi's motion.  Lisi's
offense conduct in this case is extremely serious, as this Court recognized at sentencing when it
noted that the conduct was "egregious to a level . . . I really didn't think was possible." (*See* 15 Cr.
457 (KPF), Dkt. No. 126, at 103).  This conduct included defrauding a widow with young children
of substantially all of her savings.  This conduct occurred when Lisi and his co-conspirator
Katerina Arvanitakis were purportedly acting as attorneys for the clients they defrauded, which as
this Court noted makes the offense all the more serious. *See id.* at 104 ("I can't look past the fact
that Mr. Lisi was an attorney when he was doing all of this and that he exploited that. And I find
the conduct to be something that no amount of rehabilitation can completely erase.").  That Lisi's
offense conduct in this case occurred while he was facing criminal charges in multiple jurisdictions
and was under the supervision of multiple courts makes his offense all the more inexcusable.

Lisi's egregious offense conduct is compounded by his continued failure to take
responsibility for the gravity of his crimes.  As Judge Buchwald noted when she sentenced Lisi on

---

[3] To the extent Lisi relies on his own medical condition for his Motion, the applicable Sentencing
Guideline makes clear that his underlying health issues simply do not qualify under
§ 3582(c)(1)(A).  U.S.S.G. § 1B1.13 states in relevant part as to "[m]edical [c]ondition of the
[d]efendant" that the defendant must be "suffering from a terminal illness (*i.e.*, a serious and
advanced illness with an end of life trajectory)" or is "suffering from a serious physical or medical
condition . . . that substantially diminishes the ability of the defendant to provide self-care within
the environment of a correctional facility and from which he or she is not expected to recover."
Lisi has never claimed that his current health conditions meet any of this criteria, which plainly
apply to an individual suffering from grave health issues likely to result in death.

the First and Second SDNY Indictments, Lisi has an immense capacity for blaming others for what he did and demonstrates a remarkable lack of understanding for the true extent of his crimes despite his legal training. (*See* 09 Cr. 948 (NRB), Dkt. No. 311, at 26-30) ("You should be ashamed that even to this day that you have never stopped blaming the fates of who you encountered on your life's journey for the myriad of crimes that you committed, even going so far as to blame Judge Swain for entertaining an argument when she was a bankruptcy judge.  Your letter is just filled with so many examples of self-pity. To this day, you seem incapable of understanding that it is fraud to borrow money from a bank based on false statements of who the borrower is. For someone with a law degree, who passed the bar, it is truly difficult to fathom how you could not understand such a simple concept.").

Yet, despite having years in prison to consider the full extent of his many crimes and take responsibility for them, Brandon Lisi to this day still fails to own up to what he did and minimizes his conduct.  In the Motion, Lisi argues in pertinent part that granting him compassionate release "would clearly save the American taxpayers money, which is what the [First Step Act] is all about" and that "[t]here is no justifiable reason to keep [him] in prison and away from his ill mother, as he was over-sentenced for the crime alleged, and the only other defendants to have done any time in this case received 24 months and 90 days respectively, as opposed to the 38 months that Petitioner received on top of the 78 months from his original sentence . . . for virtually the same conduct." (Lisi Mem. 2).

This argument is as baseless as it is offensive.  That Lisi would make such assertions after all this time shows that – despite what he told this Court at sentencing and despite having years in prison to consider the seriousness of what he did – he does not actually understand the gravity of his crimes or fully accept responsibility for them.  All of this weighs against granting his compassionate release motion under the § 3553(a) factors that remain relevant under § 3582(c)(1)(A). *See* 18 U.S.C. § 3582(c)(1)(A) (noting that the district court may reduce the term of imprisonment "after considering the factors set forth in section 3553(a) to the extent that they are applicable").

First, there is a "justifiable reason" to keep Lisi in prison.  The Court laid out those very reasons in detail when imposing a sentence of 38 months' imprisonment to run consecutive to his original sentence, and they included, among other things, imposing a sentence that appropriately reflects the seriousness of Lisi's offense and deterring Lisi from committing further crimes, which is particularly relevant given that he committed the instant offense *after* he was already indicted twice in this District and once in Suffolk County and was on court supervision.  Lisi was originally scheduled to be released in or about February 2020 on the term of imprisonment imposed by Judge Buchwald. (PSR ¶ 52).  If his compassionate release motion were granted, he will have essentially done no additional time for his gravely serious offense in this case, entirely undermining all of the well-considered reasons why this Court ultimately decided to impose a 38-month term of imprisonment to run consecutive to Lisi's original sentence.

Second, Lisi's claim that he was "over-sentenced" is derisory and reflects the extent to which he has not actually come to terms with what he did.  Lisi was sentenced well below the applicable Guidelines range even after this Court recognized that his offense conduct was

"egregious to a level I really—I really didn't think was possible." (15 Cr. 457 (KPF), Dkt. No. 126, at 103).

Third, Lisi's argument that he was "over-sentenced" because he received a greater sentence than Arvanitakis or Paul Katsaros is at odds with the facts underlying each defendant's conduct. Lisi played a central role in carrying out the scheme to which he has pleaded guilty. As set forth in greater detail in the PSR and the Government's sentencing submission, he personally made many of the false statements upon which his victims relied. He also took steps to induce one of his victims to make false statements in a bankruptcy proceeding. Lisi's role, thus, supported a longer sentence than that received by his co-defendants. Moreover, Lisi's prior criminal conduct – and the fact that he committed the instant offenses while on bail – further supported the imposition of a longer sentence than that received by first time offenders Arvanitakis and Katsaros.

Finally, Lisi's argument that his sentence in this case was "for virtually the same conduct" as the conduct he was sentenced for in the initial proceedings before Judge Buchwald entirely ignores the victims of his later frauds, which caused these victims to each lose hundreds of thousands of dollars.  As the Government argued at sentencing, the instant offense is separate in time from the defendant's prior offenses and involves distinct misrepresentations, victims, and proceeds. While the defendant's earlier offenses involved traditional mortgage fraud, committed against lenders, here, the defendant and his co-conspirator induced investment in real estate and other projects from individual victims, and then diverted much of those funds for their own purposes. At sentencing, the Court heard substantial argument on the question of whether the sentence in the instant case should be imposed concurrent to the sentence imposed by Judge Buchwald and explicitly considered whether the conduct this case was, essentially, "relevant conduct" under the United States Sentencing Guidelines with regard to the defendant's prior convictions. Having heard those arguments, the Court determined that a concurrent sentence was not appropriate. Thus Lisi's claim that he was sentenced to an additional 38 months' imprisonment for virtually identical conduct as his initial crimes is just wrong as a factual matter. That he still fails to see that after all this time speaks volumes about his lack of acceptance of the true nature of his myriad crimes.

In sum, Lisi's serious offense conduct and his continued lack of acknowledgment of the gravity of those crimes weighs heavily against his Motion for compassionate release.

### B.  Lisi's Mother's Health Does Not Warrant Compassionate Release

Turning to Lisi's mother's health, Lisi argues that "[n]owhere was there any discussion that Petitioner was the sole individual responsible for taking care of his mother, who is seriously ill and heavily reliant on her son for support." (Lisi Mem. at 11).  This is wrong.  Lisi's mother's health was taken into account both at the sentencing before Your Honor and at his prior sentencing before Judge Buchwald. At the sentencing before Judge Buchwald, in fact, she observed that Lisi should be "ashamed" for relying on his mother's health condition to seek leniency, which included "dragg[ing] her into court for no reason other than an obvious ploy to appeal to the Court's sympathy."  (09 Cr. 948 (NRB), Dkt. No. 311, at 26-30).  Likewise, this Court expressly factored in its "concerns about Mr. Lisi's mother" in deciding to impose a sentence below the Guidelines.

(*Id.* at 105).  Thus to the extent Lisi argues that his mother's health was not taken into account at the time his sentence was fashioned by this Court, this is simply untrue.

More fundamentally, Lisi's motion fails because under § 3582(c)(1)(A), a reduction in his sentence must be "consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  But the applicable Sentencing Guideline, U.S.S.G. § 1B1.13, expressly discusses what constitutes an "extraordinary and compelling reason" and specifically addresses "[f]amily [c]ircumstances."  *See* U.S.S.G. § 1B1.13 Application Note 1(C). That provision provides that "death or incapacitation of the caregiver of the defendant's minor child or minor children" or "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner" constitute such extraordinary family circumstances to warrant reduction of a term of imprisonment under § 3582(c)(1)(A).  Here, however, Lisi simply does not meet those circumstances.  There are no minor children at issue and neither his spouse nor registered partner is at issue.  Rather, Lisi's elderly mother is ill.

While the Government is sympathetic to Lisi's mother's illness, her health condition does not warrant the extraordinary relief contemplated by § 3582(c)(1)(A).  That provision is – as made clear by the relevant Sentencing Guidelines – reserved for the extraordinary situation where a minor child would be without a caregiver or a spouse would be without a caregiver.  While it is regrettable that Lisi's mother suffers from numerous health issues, she is simply not covered by Application Note 1(C) of U.S.S.G. § 1B1.13. *See United States v. Gonzales*, No. SA-05-CR-561-XR, 2019 U.S. Dist. LEXIS 177043 at *7 (W.D. Tex. Oct. 10, 2019) (holding that defendant's elderly mother is not covered by the application notes to § 1B1.13).

Even looking beyond the plain text of the statute and the applicable Guidelines provision, courts have held that an incarcerated defendant in Lisi's position does not qualify for compassionate release. *See, e.g.*, *United States v. Nevers*, NO. 16-88, 2019 U.S. Dist. LEXIS 223249 at *10 (E.D. La. Dec. 27, 2019) (holding it wasn't extraordinary and compelling that defendant had an aging mother with heart and lung conditions who was also responsible for taking care of an elderly stepfather and the defendant's disabled daughter); *United States v. Ingram*, No. 2:14-cr-40, 2019 U.S. Dist. LEXIS 118304 at *4-5 (S.D. Ohio. Jul. 16, 2019) (denying compassionate release motion and noting that "[m]any, if not all inmates, have sick and aging parents" but that "[s]uch circumstance is not extraordinary").

In addition, the supplemental letters provided by Lisi himself state that his mother has an aide currently taking care of her.  For example, in Lisi's letter of January 11, 2020, he acknowledges that his mother has a home health aide. (*See* Dkt. No. 213, at 3; *see also* Dkt. No. 215 (Lisi discussing interactions with his mother's health aide).[4]  While he claims to be dissatisfied with their care, this is not a basis for the extraordinary relief of compassionate release.  In addition, Lisi does not explain what efforts, if any, have been made to involve his sister in taking responsibility for care of their mother.  Lisi is thus not the sole potential caregiver for his mother, and his desire to be the primary caregiver is not sufficient to meet the criteria for extraordinary and

---

[4] The PSR prepared in July 2017 noted that Lisi's mother received "24-hour home care services." (PSR ¶ 57).

compelling reasons. *See United States v. Marshall,* 3:16CR-00004-JHM, 2020 U.S. Dist. LEXIS 3616 at *7 (W.D.Ky. Jan. 9, 2020) (finding that the defendant's family's "desire to have him home to care for [his grandfather]" does not meet "the criteria for extraordinary and compelling reasons", even when coupled with the grandfather's "failing health.").

Finally, Lisi has provided no medical records, no letters from doctors, and no other corroborating support for the current condition of his mother.  This concern is particularly important in light of the prior skepticism expressed by Judge Buchwald regarding Lisi's use of his mother's medical condition in order to seek leniency.  The lack of corroborating medical records regarding Lisi's mother's current medical condition is a factor further weighing against the provision of extraordinary relief here.  *See, e.g., Gonzales*, 2019 U.S. Dist. LEXIS 177043 at *7 (denying motion for compassionate release and noting that "critically, [the defendant] provides no documentary evidence to support any of the claims of medical illnesses afflicting his family members").

## Conclusion

For the foregoing reasons, the Government respectfully requests that the Court deny Lisi's motion for compassionate release pursuant to 18 U.S.C. § 3582 and the First Step Act.


Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney


By: _/s_____
Noah Solowiejczyk
Katherine Reilly
Assistant United States Attorneys
Southern District of New York
(212) 637-2473/6521


cc: Brandon Lisi (by certified mail)